OPINION *Page 2 
{¶ 1} The defendant-appellant, Nicholas Portentoso, appeals the judgment of the Seneca County Common Pleas Court, denying his motion for reallocation of parental rights and ordering him to pay $25,000 to the plaintiff-appellee, Kathleen Portentoso Berger, pursuant to their separation agreement.
 {¶ 2} On February 7, 2003, Kathleen filed a complaint for divorce. Nicholas filed his answer and a counterclaim, to which Kathleen timely filed an answer. On October 29, 2003, the parties filed a separation agreement and property settlement, which addressed property distribution and was adopted by the court as part of the final decree of divorce on November 11, 2003. As it relates to this appeal, the parties agreed that Kathleen would move out of the marital home and take only certain items of personal property with her. The parties also agreed that Nicholas would pay to Kathleen $50,000 in two equal installments. The first installment was due within 24 hours after the separation agreement was filed, and the remaining $25,000 payment was conditional pending an inspection of the marital residence, which was awarded to Nicholas.
 {¶ 3} The separation agreement also provided for the custody of the parties' children. The parties agreed that Kathleen would be the legal custodian and residential parent of three of the minor children, Marie, Nikos, and Grace, and Nicholas would be the legal custodian and residential parent of one minor child, *Page 3 
Dana. The parties' oldest child, Marlana was emancipated at the time of the divorce. The parties also agreed on a visitation schedule and added a provision in the separation agreement about telephone contact between themselves and the minor children.
 {¶ 4} On December 17, 2003, Nicholas filed a motion for reallocation of parental rights, requesting that he be named residential parent and legal custodian of Marie, Nikos, and Grace because Kathleen had abruptly moved the children to Cheboygan, Michigan following her marriage to Wayne Berger. In his attached affidavit, Nicholas indicated that Kathleen had failed to inform him and the children's school officials of the move.
 {¶ 5} On April 23, 2004, Kathleen filed a motion for contempt, which was properly served upon Nicholas. In her motion, Kathleen alleged that Nicholas called her home in violation of the telephone contact provision of the settlement agreement. She alleged that Nicholas was in arrears on child support, that Nicholas had failed to notify the Ohio Department of Job and Family Services of his employment, that Nicholas had failed to have child support withheld from his paycheck, and that Nicholas had failed to post a child support bond. Kathleen also alleged that Nicholas had failed to re-finance the marital residence and remove her name from the mortgage as required by the separation agreement. Finally, Kathleen asserted that Nicholas had not paid the second $25,000 installment *Page 4 
payment. Kathleen indicated that counsel for both parties and Nicholas had done an inspection of the home when Nicholas took possession. Kathleen admitted the following damages to the home: a hole in one wall, which had been re-plastered, but not painted, a crack in a bedroom window, a broken door frame on one of the doors, and damage in the dog kennel, which Nicholas ran as a business. Kathleen also stated that Nicholas was not entitled to an offset of the $25,000 for the damages, but instead must seek remedy through contempt proceedings.
 {¶ 6} On May 4, 2004, Nicholas filed a motion for contempt, which was properly served. Nicholas alleged the following contemptuous behavior: Kathleen was not allowing visitation as specified in the court's local rules (which the parties agreed to follow); Kathleen took items of personal property from the marital home that were not allowed by the separation agreement; Kathleen did not allow the children to call him each Wednesday as agreed; Kathleen tried to walk into his mother's house to pick up the children after visitation, even though she was three hours late and the parties had agreed to curb-side pick-ups; Kathleen did not make the children's medical records available to him; and Kathleen violated various court rules by refusing the mail and packages he sent to the children, by refusing to notify him about the children's schooling, and by refusing to provide adequate clothing for the children during his scheduled visitation. *Page 5 
 {¶ 7} On June 23, 2004, the court appointed a guardian ad litem for the children, and on August 5, 2004, the guardian ad litem filed a motion for temporary custody orders, asking the court to name Nicholas as the temporary legal custodian and residential parent of Marie. On October 15, 2004, the parties filed a consent judgment entry agreeing that Nicholas would be Marie's residential parent and legal custodian.
 {¶ 8} Between August 30 and September 2, 2004, the court heard evidence on the parties' contempt motions.
 {¶ 9} On October 22, 2004, Kathleen filed a motion to modify visitation. In her motion, Kathleen indicated that she had moved to Pemberville, Ohio and requested a neutral location where the parties could exchange the children for visitation. On October 25, 2004, Nicholas filed a second motion for contempt, which was properly served. Nicholas alleged that by moving to Pemberville, Kathleen had failed to abide by a prior order of the court requiring her to give 30 days notice before she relocated.
 {¶ 10} On January 24 through January 27, 2005, the court heard evidence on Nicholas' motion to reallocate parental rights.
 {¶ 11} In March 2005, Nicholas was indicted by the Seneca County Grand Jury for several criminal offenses. As a result, Kathleen filed various motions to *Page 6 
provide for custody[1] and visitation while Nicholas was incarcerated pending trial and when he was released on bond. When Nicholas was released from jail, Kathleen requested that his visitation sessions with Nikos and Grace be supervised because the children had made statements to police, which resulted in a search of Nicholas' home. None of these motions are before us on appeal.
 {¶ 12} On December 6, 2006, the magistrate issued his decision. The magistrate indicated that his decision had been delayed, in part, because of the criminal proceedings pending against Nicholas. The magistrate found that the children were to remain in their existing custodial arrangements because they had adjusted well to each living situation. The magistrate held that Nicholas was not in contempt for failing to pay the second $25,000 to Kathleen because there were legitimate issues about the condition of the marital residence when he took possession. However, the magistrate went on to find that the words "same physical condition," as used in the parties' separation agreement, referred to structural damage, and Nicholas' complaints and evidence related only to a lack of cleanliness. Therefore, the magistrate ordered Nicholas to pay Kathleen within 30 days of the final order. Finally, the court found that Kathleen had taken items of personal property she was not entitled to take and ordered her to return the items or be held in contempt. The magistrate considered Marie's testimony to determine *Page 7 
which items of personal property Kathleen had wrongfully removed from the home.
 {¶ 13} Within fourteen days of filing the magistrate's decision, Nicholas filed objections, and several continuances were granted so the court reporter could prepare the voluminous transcripts. While the objections were pending, Nicholas filed a third motion for contempt, which was dismissed before the trial court ruled on the objections. On December 20, 2006, the trial court overruled Nicholas' objections, finding that the testimony was clear concerning custody; that the testimony in regard to the $25,000 supports the magistrate's decision; and that the evidence supported a finding of contempt against Kathleen for her having wrongfully taken items of personal property. On that same date, the magistrate prepared and filed the court's judgment entry adopting his earlier decision. Nicholas appeals these judgments and asserts eight assignments of error for our review.
 First Assignment of Error The trial court erred when it found that Defendant had failed to prove that there had been a "substantial" change in circumstances.
 Second Assignment of Error The trial court erred when it found that Defendant had failed to prove that there had been a change in circumstances. *Page 8 
 Third Assignment of Error The trial court erred when it found that Appellant had failed to prove that it was in the best interests of the minor children that he be designated the residential parent and legal custodian.
 Fourth Assignment of Error The trial court erred when it found that the harm caused by a change in custody to Father would be outweighed by the benefits resulting from the change as required by R.C. 3109.04(E)(1)(a).
 Fifth Assignment of Error The trial court erred when it determined that the Appellant was responsible for the payment of the second $25,000 because the simple dirt or clutter was not sufficient to terminate the part of the agreement dealing with the payment.
 Sixth Assignment of Error The trial court erred when it determined that the Appellee was not responsible for either returning to Appellant all of the assets that were missing from the residence when he regained possession of the property, or paying to Appellant the cost of said assets.
 Seventh Assignment of Error The trial court erred when it sustained the objection of the Seneca County Prosecuting Attorney when Attorney Nord began cross examining a witness called by Appellee about testimony given on direct examination by counsel for Appellee.
 Eighth Assignment of Error The trial court erred when it considered evidence and/or factors outside of the scope of testimony and evidence presented at the hearings on the various motions when it issued its decision on the motions before it. *Page 9 
 {¶ 14} Initially, we note that Kathleen has failed to file an appellee's brief. Pursuant to App.R. 18(C), we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 {¶ 15} In the first assignment of error, Nicholas contends that the trial court applied R.C. 3109.04(E)(1)(a) incorrectly. In his decision, the magistrate found, "[t]here has been an utter failure to show any substantial change in circumstances between the two parties." (Mag. Dec., Jun. 1, 2006, at 2). Nicholas argues that the magistrate erred in requiring him to prove a "substantial" change in circumstances when only a change in circumstances is required.
 {¶ 16} When either parent files a motion to reallocate parental rights and responsibilities, the court must look to R.C. 3109.04(E)(1)(a), which states:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child [or] the child's residential parent, * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent[.]
 (ii) The child, with the consent of the residential parent * * *, has *Page 10 been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
In Davis v. Flickinger, 77 Ohio St.3d 415, 417, 1997-Ohio-260,674 N.E.2d 1159, the court held "R.C. 3109.04 requires only a finding of a `change in circumstances' before a trial court can determine the best interest of the child in considering a change of custody. Nowhere in this statute does the word `substantial' appear." The court also noted that any change in circumstances "must be a change of substance, not a slight or inconsequential change." Id. at 418. Accordingly, the trial court erred by requiring Nicholas to prove a "substantial" change in circumstances. The first assignment of error is sustained.
 {¶ 17} In the second assignment of error, Nicholas contends if we were to apply the appropriate standard, the trial court erred in holding that he presented no evidence of a change in circumstances. Nicholas contends that Kathleen removed Marie, Nikos, and Grace from Ohio shortly after the divorce was finalized and took them to Cheboygan, Michigan without his knowledge. Nicholas argues that shortly after the move to Michigan, Kathleen married her current husband, Wayne Berger; that the move interfered with his visitation schedule, which required the parties to utilize the court's long distance visitation schedule in place of their agreed custody arrangement; and that Dana's ability to interact with his siblings *Page 11 
was severely hindered by Kathleen's move. Nicholas asserts that after living in Cheboygan for approximately six months, Kathleen moved the children to Pemberville, Ohio. Finally, Nicholas contends that after Marie was placed in his custody, Kathleen refused to have any contact with her daughter, including the refusal to send cards and/or presents for holidays and birthdays.
 {¶ 18} In determining whether there has been a change of circumstances, we will not disturb the trial court's decision absent an abuse of discretion. Davis, at 418, citing Miller v. Miller (1988),37 Ohio St.3d 71, 523 N.E.2d 846. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quotingState v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, internal citations omitted. The trial court is given such latitude because the judge is in the best position to "view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Id.
 {¶ 19} In this case, the magistrate found an "utter failure to show any substantial change in circumstances between the two parties. Further, circumstances as to the children have not changed." (Mag. Dec, at 2). The magistrate's decision is not supported by the record and is unreasonable. Kathleen admitted that she moved the children to Cheboygan, Michigan without notifying *Page 12 
Nicholas. Kathleen admitted that she and the children moved into a residence in Michigan with Wayne Berger. Kathleen admitted that after the initial move, she, Wayne, and the children moved to a different home in Michigan. Kathleen admitted that shortly after the divorce was finalized between her and Nicholas, she married Wayne. Kathleen admitted that once Marie moved back to Ohio to stay with Nicholas, she refused to send Christmas cards and/or presents and birthday cards and/or presents to Marie. Kathleen admitted that after living in Michigan for six months, she, Wayne, and the children moved to Pemberville, Ohio. With this record, it is clear that these changes in the children's lives were not merely trivial or inconsequential. As such, the trial court's finding that Nicholas had "utterly failed" to prove his case was an abuse of discretion. The second assignment of error is sustained.
 {¶ 20} For ease of analysis, we elect to address the third and eighth assignments of error together. In the third assignment of error, Nicholas contends the trial court erred when it found the prior custody award to be in the children's best interests (Nikos and Grace to remain with Kathleen, and Marie to remain with Nicholas).[2] Nicholas asserts that once a trial court finds a change in circumstances, it must make a best interest determination by considering the factors in R.C.3109.04(F)(1)(a)-(j). In his brief, Nicholas set forth each factor and *Page 13 
applicable facts. Based on the factors, Nicholas argues the trial court should have found it in the children's best interests that he be named legal custodian and residential parent.
 {¶ 21} In the eighth assignment of error, Nicholas contends the trial court erred by considering a criminal action filed against him even though the indictment was not filed until almost three months after the close of evidence in this matter. Nicholas argues the trial court considered the criminal matters in reaching its decision, and its decision was delayed for almost two years because the trial court waited for the criminal case to be resolved.
 {¶ 22} As noted above, we review the trial court's determination for an abuse of discretion. Although the court does not allude to the R.C.3109.04(F)(1) factors, it is not required to do so, "so long as the judgment entry is supported by some competent, credible evidence."Bunten v. Bunten (1998), 126 Ohio App.3d 443, 447, 710 N.E.2d 757, citing Masitto v. Masitto (1986), 22 Ohio St.3d 63, 488 N.E.2d 857. In his decision, the magistrate found:
 The resolution of these matters has been delayed somewhat due to the filing of certain criminal charges in Common Pleas Court, which have caused this Court to await results of said case instead of proceeding to final decisions in these [sic] matter.
 * * *
 [w]ith all due respect to both parties, their attorneys, and the Guardian ad litem, the Magistrate does not see where an alteration of the current allocation is in the best interests of the *Page 14 children or otherwise appropriate. Marie has been adequately integrated into the house of her father, and there has been insufficient evidence to prove any modification of that should take place. By the same token, Nikos and Grace are doing well with their mother and there is no adequate reason to show that their best interests require a modification * * * .
(Emphasis added.). (Mag. Dec., at 1, 2). The hearing on the motion for reallocation of parental rights lasted four days and highlighted negative aspects of both parties' lives. The close of evidence was on January 27, 2005, and as noted above, Nicholas was not indicted until March 2005.
 {¶ 23} R.C. 3109.04(F)(1)(h) permits the trial court to consider certain prior criminal convictions in making a best interest determination, and although the list of factors in R.C. 3109.04(F) is non-exclusive, the facts relied upon by the court must be in evidence. Here, the evidence disclosed an investigation, which had been pending against Nicholas since February 2003; however, Nicholas had not been convicted, let alone indicted, for any offense arising from that investigation. Based on this record, Nicholas' argument as to the eighth assignment of error is reasonable. The trial court essentially considered evidence not before it and stayed these proceedings until a criminal matter, in which Nicholas was not indicted when the evidence closed, could be resolved. In finding Nicholas' argument reasonable, we hold that the trial court considered improper evidence, which apparently had some effect on the best interest determination. *Page 15 
 {¶ 24} Based on the foregoing analysis, this matter must be remanded to the trial court for determination based solely on the evidence before the court at the close of evidence on January 27, 2005. If either party wants the court to consider Nicholas' subsequent criminal history, they can file a motion to re-open the evidence,[3] or once the court has rendered its decision, file a new motion to reallocate parental rights and responsibilities, if they deem it necessary. The third and eighth assignments of error are sustained.
 {¶ 25} In the sixth assignment of error, Nicholas contends the trial court erred because it did not hold Kathleen in contempt for taking his personal property from the marital home in contravention of the parties' separation agreement and property distribution. Nicholas argues the trial court should have ordered the return of all the personal property he alleges was missing from the parties' former marital residence when he regained possession in November 2003. In the alternative, Nicholas argues that the trial court should have ordered Kathleen to pay damages for the missing items.
 {¶ 26} In their separation agreement, the parties provided for the division of personal property. Specifically, the agreement states:
 The parties have amicably divided all household goods and furnishings to their mutual satisfaction and agreement. Wife shall retain all property listed in the attached Exhibit D. In addition, Wife shall retain all personal property belonging to *Page 16 herself and the three children in her legal custody. All remaining household goods and furnishings shall become the property of Husband.
 The parties stipulate and agree that the marital property has been divided to their mutual satisfaction and agreement and that the division is fair and equitable and in accordance with the provisions of Section 3105.171 Ohio Revised Code. The parties each waive the right to disclosure concerning the value of said property by the other.
(Separation Agreement and Prop. Settlement, Oct. 29, 2003, at 10). At trial, Nicholas produced a list of missing items he contends were not listed in Exhibit D to the separation agreement and were neither Kathleen's nor the children's separate property. Nicholas used receipts and catalogue pricing to value each of the allegedly missing items, which resulted in a loss of $50,309.10.[4] The list included missing power and hand tools, hunting equipment, and miscellaneous household items.
 {¶ 27} At trial, Kathleen called several witnesses to testify that they had previously helped Nicholas in performing various home and automobile repairs and that they were aware of what tools he owned. Many of the witnesses testified that Nicholas' list was a "wish list," or they were unable to ascertain whether he ever owned some of the listed tools. Marlana Portentoso, the eldest child, was called to testify. She was not in the residence for several months prior to Kathleen vacating the property, and she was not in the residence at the time Nicholas took *Page 17 
possession. Marie Portentoso was called to testify about what items she saw in Kathleen's house in Michigan. Based on Marie's testimony, the magistrate ordered Kathleen to return several items of personal property to Nicholas. However, Marie also testified that the garage had been full of unpacked boxes.
 {¶ 28} Nicholas testified that everything on the list was in the home when he vacated in February 2003. He testified that when he took possession of the home in November 2003, the listed items were missing during the initial inspection, which was conducted along with his attorney and Kathleen's attorney.[5] Kathleen also testified. She indicated that she did not take Nicholas' items, that she did not know where they were, and that between the time Nicholas moved out of the residence in February 2003 and the time she moved out in November 2003, there were several instances where unknown people had entered the property.[6] Kathleen implied that the unknown people took Nicholas' items, and she could not be held responsible for these unknown people's actions.
 {¶ 29} "An appellate court reviews a trial court's decision in contempt proceedings under an abuse of discretion standard."McLaughlin v. McLaughlin *Page 18 Breznenick, 3d Dist. No. 8-06-06, 2007-Ohio-1087, citing Saltzman v.Saltzman, 3d Dist. No. 16-02-10, 2002-Ohio-6490, at ¶ 12, citingCollins v. Collins (May 8, 1997), 3d Dist. No. 17-97-1, at *3. On this record, we cannot find an abuse of discretion. The magistrate heard all of the evidence. He apparently believed neither Kathleen nor Nicholas and instead relied upon the testimony of Marie, who was in Michigan and knew, at least to some extent, which items of personal property had been in the marital home and which items were subsequently moved to Kathleen's home in Michigan. Even the witnesses who could confirm that Nicholas had owned some of the listed items could not confirm the items' current whereabouts. The trial court made a ruling on the evidence and ordered the return of several items Kathleen had not been entitled to take with her. There was no evidence, other than Nicholas' assertions, that Kathleen took the items. On this record, there is no abuse of discretion. The sixth assignment of error is overruled.
 {¶ 30} In the fifth assignment of error, Nicholas contends the trial court erred when it ordered him to pay Kathleen the second lump-sum payment of $25,000 subsequent to a satisfactory inspection of the marital home after he took possession in November 2003.
 {¶ 31} The parties' separation agreement states in pertinent part:
 Husband shall pay to Wife the sum of Fifty Thousand Dollars ($50,000.00) as a lump sum property settlement. Husband shall pay the sum of Twenty-five Thousand Dollars ($25,000.00) to Wife by certified check by delivering the same to Attorney Kent *Page 19 D. Nord within twenty-four (24) hours of the signing and filing and this Separation Agreement and Property Settlement. Wife shall vacate the premises within fourteen (14) days after receipt. The remaining $25,000.00 shall be paid to Wife within sixty (60) days of her vacating the marital residence. The $25,000.00 shall be less any and all utilities due and owing on the marital home which were not paid by Wife prior to her vacating the marital home.
 The second $25,000.00 payment is conditional upon the marital home being in the same physical condition it was in when the Defendant originally vacated the premises on February 10, 2003. Counsel for both parties and Defendant will survey the marital home on the first day Defendant retakes possession of the marital home.
(Emphasis added). (Separation Agreement and Prop. Settlement, at 9-10).[7] The magistrate determined that the phrase "same physical condition" was limited only to structural damage and ordered Nicholas to pay the second $25,000 installment. Specifically, the magistrate wrote:
 there is not a contempt at this point because there was a legitimate issue raised as to the condition of the former marital residence at the exchange of that residence from Kathleen to Nicholas. However, this does not alter the fact that the Magistrate's interpretation of [the] condition deals with structure, not with cleanliness. The damages testified about by husband in this matter were not sufficient to prove structural alteration or destruction by the wife. If the agreement had read that the residence had to be clean, that might be a different story. Simple dirt or clutter is not sufficient to terminate the part of the agreement dealing with the payment.
(Mag. Dec., at 2). *Page 20 
 {¶ 32} As stated above, we review a trial court's decision on a contempt motion for an abuse of discretion. On this issue, we find Nicholas' argument to be reasonable as there is competent and credible evidence in the record to show not only structural damage to the property, which would relieve his duty to pay, but also unpaid utility bills, which would entitle Nicholas to a set-off The contract is clear and unambiguous that the entire second $25,000 installment is conditional upon the house being in the "same physical condition" as when Nicholas vacated in February 2003.
 {¶ 33} While we disagree with the magistrate's interpretation of the phrase "same physical condition," the record clearly shows evidence of structural damage, and Nicholas has presented competent and credible evidence that damage to the home was caused during his absence. Furthermore, the settlement agreement places the duty on Kathleen to maintain the premises. The contract not only prohibited Kathleen from destroying the property, but imposed upon her the duty to maintain the property against any damages. This clear language required Kathleen to be responsible even for damages which were not intentionally caused by her.
 {¶ 34} At the hearing, Nicholas produced evidence that a door had been broken when Kathleen locked her keys in the house. Kathleen admitted this *Page 21 
damage. There was evidence that Dana punched a hole in a wall during Nicholas' absence, and the damage was not fully repaired. Kathleen admitted this damage. Marie apparently kicked a window in her sleep, causing it to break. Kathleen admitted this damage. Nicholas also testified that the dog kennel had special galvanized panels in place, which were ruined when Kathleen allowed dog feces to build up and destroy the panels. Nicholas testified that the only way to repair the damage was to replace the entire panel. Nicholas produced photographs showing this damage, and Marlana testified, while viewing the pictures, that she had never seen the kennels in such bad condition. Finally, Nicholas testified that a specialized enclosure in the kennel had been cut, which required the entire section to be replaced. Kathleen also admitted this damage. Nicholas testified that when he inspected the property, there were tire tracks over the septic tank and the tank was caved in. Several other witnesses corroborated Nicholas' testimony. Kathleen denied operating any vehicle in the vicinity of the septic tank; however, the damage occurred between the time Nicholas moved out in February 2003 and when he regained possession in November 2003. All of these damages are more than "simple dirt or clutter." By the clear and unambiguous terms of the parties' agreement, Nicholas is relieved of his duty to pay the second $25,000 installment to Kathleen, and this is so even if we apply the magistrate's standard requiring *Page 22 
structural damage. The magistrate's findings and the trial court's subsequent adoption of them are arbitrary and unreasonable based on this record. The fifth assignment of error is sustained.
 {¶ 35} In the seventh assignment of error, Nicholas contends the trial court erred when it sustained the county prosecutor's objection concerning testimony given by his investigator.[8] On direct examination, the investigator, Jerome Kiser, was asked whether Nicholas was under investigation and whether the investigation had been pending since February 2003. Kiser answered both questions in the affirmative. On cross-examination, Nicholas asked Kiser what he was being investigated for. The prosecutor objected, and the trial court sustained the objection. Nicholas argues that under Evid.R. 611(B), his question to the investigator concerning the details of the criminal investigation was relevant, and the "door was opened" on direct examination to allow the question.
 {¶ 36} As stated above, the convictions a court shall consider under the R.C. 3109.04(F)(1) factors are specified in subsection (h). In this case, the questions on direct examination were not limited to whether Nicholas was under investigation for any of the specific offenses listed in R.C. 3109.04(F)(1)(h). Second, a mere "investigation" is not the equivalent of a guilty plea or conviction, *Page 23 
which is also required by R.C. 3109.04(F)(1)(h). While the questions on direct examination may have been irrelevant, the question asked on cross-examination was no less irrelevant. The trial court did not err by disallowing the line of questioning regarding an "investigation" on cross-examination since the evidence, absent the establishment of a guilty plea or conviction at the time the evidence was taken, was not something the trial court should have used in making its best interest determination. The seventh assignment of error is overruled.
 {¶ 37} Consistent with this opinion, the judgment of the Seneca County Common Pleas Court is affirmed in part and reversed in part. This matter is remanded for further proceedings.
Judgment affirmed in part, reversed in part and cause remanded.
 ROGERS, P.J., and PRESTON, J., concur.
[1] We note that in her motions to change custody, Kathleen did not request custody of Dana and Marie; instead, she requested that the children be placed in foster care.
[2] Dana was emancipated by the time the court issued its judgment entry.
[3] See generally Patton v. Ditmyer, 4th Dist. Nos. 05CA12, 05CA21, 05CA22, 2006-Ohio-7107, at ¶ 63, quotingPisanick-Miller v. Roulette Pontiac-Cadillac GMC, Inc. (1991),62 Ohio App.3d 757, 577 N.E.2d 446.
[4] This amount also includes unpaid utility bills and damages to the residence. These issues will be discussed later in the opinion.
[5] We note that the separation agreement specifically provided that both attorneys would accompany Nicholas during the initial inspection of the marital residence, and the testimony was clear that both attorneys were present during the inspection. Such actions made counsel for both parties potential witnesses in this case. As such, one questions the propriety of either attorney representing either party on these contempt issues.
[6] The testimony implied that the unknown people entering the property were either Nicholas or people acting on his behalf.
[7] We again note counsels' involvement as property inspectors and the compromising position in which such duty places both attorneys, as either one or both were potential witnesses concerning the condition of the property.
[8] We note that a special prosecutor had been assigned to investigate Nicholas' alleged criminal activity; however, the Seneca County Prosecutor was present in the courtroom during some of the proceedings in this matter. Not only was the prosecutor present, he was permitted to participate in the proceedings even though he was neither a party to the action nor representing a party. *Page 1