OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of James Lee Koller, filed August 14, 2007. James and Tammy M. Koller were married on April 27, 1996, and they had two children in the course of their marriage, Briston Koller, born on November 17, 2001, and Braden Koller, born on May 19, 2003. In June of 2004, Tammy moved out of the marital residence. On January 19, 2005, James filed a Complaint for Divorce, seeking sole custody of *Page 2 
the children. On December 2, 2005, Tammy filed a Petition for Shared Parenting and a Shared Parenting Plan.
 {¶ 2} While the parties reached agreement on some issues regarding the termination of their marriage, on August 22, 2006, and on February 27 and 28, 2007, a hearing was held on the issues of the allocation of parental rights and responsibilities, child support, and the tax dependency exemption. After the hearing, both parties filed closing memoranda. The trial court issued a Decision on June 27, 2007, and a Final Judgment and Decree of Divorce was issued on August 3, 2007, incorporating a Final Decree of Shared Parenting consistent with Tammy's proposed shared parenting plan. At issue herein is the trial court's allocation of parental rights and responsibilities.
 {¶ 3} James resides in the parties' marital residence in Lebanon, Ohio, and Tammy resides in Centerville, Ohio. James is a firefighter for the City of Kettering, and he works one 24 hour shift, beginning and ending at 7:00 a.m., followed by 48 hours off of work. Tammy works a flexible nine to five schedule as a loan officer. To accommodate both parties' work schedules following the parties' separation, the children have spent five nights a week with Tammy and two nights a week with James. Tammy cares for the boys from 6:00 p.m. the night before James' 24 hour shift until 9:00 a.m. following his shift, and then James has the children post-shift from 9:00 a.m. until 6:00 p.m. the following day. During Tammy's work day, her mother, Rose Ann Seibert, provides day care for the children.
 {¶ 4} The Shared Parenting Plan ("Plan") the court adopted provides for the permanent custody of the children to be shared equally by Tammy and James, and it designates both parties the children's legal custodian. Tammy is designated as the residential parent for school *Page 3 
purposes. The Plan provides for the parties to continue the above parenting time schedule. In the event of "any major difference of opinion" regarding the best interest of the children, the Plan requires the parties to resolve the matter through mediation or counseling.
 {¶ 5} James asserts one assignment of error as follows:
 {¶ 6} "THE IMPLEMENTATION OF A COURT ORDERED SHARED PARENTING PLAN WAS AN ABUSE OF DISCRETION."
 {¶ 7} James argues that the trial court failed to consider the report of the Guardian ad Litem ("G. A.L."). James argues that the G.A.L. recommended that the parties enter into a shared parenting plan, and that, if the parties could not agree on such a plan, that James "retain sole custody of the children." James argues that the G.A.L. noted the combative nature of the parties' relationship and the fact that "each party is not fully willing to facilitate parenting time by the other." While the G.A.L. filed a motion for additional time to file his report, the motion was not ruled upon, and his report was not filed with the clerk of court or admitted as an exhibit.
 {¶ 8} James further argues that the trial court "reviewed the mother's proposed shared parenting plan, did not order the father to prepare one, and adopted hers outright." James states that he "was never presented an opportunity to address the issue of Shared Parenting." James notes that the trial court had the authority to order the parties to "go through mediation processes in order to reach an amicable solution." James argues that shared parenting is not in his children's best interest, because the parties cannot cooperate and make decisions jointly regarding the children and facilitate loving relationships with the other parent. According to James, "the trial transcript of the proceedings, when evaluated as a whole, paints the picture of *Page 4 
two parents who cannot agree on the most basic of levels regarding the children and are more likely to use the children as tools to further their ongoing battle."
 {¶ 9} In response, Tammy argues that the trial court had the discretion to order James to submit a proposed shared parenting plan but was not required to do so, and she states that James could have submitted a proposed plan on his own accord. Tammy argues that the shared parenting plan that she proposed "was the agreement the parties had been operating under for the past two years and had both been able to abide by it without any issues involving the exchange of the children or parenting time of [the] other party." According to Tammy, it "is reasonable to assume the parties could continue to work under this agreement and that continuing the routine of the children would be in their best interest." Finally, Tammy argues that the trial court was not required to follow the G.A.L.'s recommendation; the "Court need not make reference to the reports it reviewed or disregarded as the ultimate judgment lies with the Court itself and not the guardian."
 {¶ 10} Before we address the parties' arguments, we note that "`[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." Haynes v.Haynes (Nov. 13, 1998), Montgomery App. No. 16992.
 {¶ 11} R.C. 3109.04 governs the allocation of parental rights and responsibilities for the *Page 5 
care of children of divorcing parents. "The statute allows the trial court, in the exercise of its sound discretion, to designate one parent as the residential parent and legal custodian of the child and divide other rights accordingly, or to allocate rights to both parents under a shared parenting plan." Goldsboro v. Goldsboro, Miami App. No. 2006 CA 48, 2007-Ohio-2135, citing Snyder v. Snyder (June 7, 2002), Clark App. No. 2002-CA-6, 2002-Ohio-2781.
 {¶ 12} "Either parent or both parents of any children may file a pleading or motion with the court requesting the court to grant both parents shared parental rights and responsibilities for the care of the children * * * ." R.C. 3109.04(G). In the event that one parent requests shared parenting and files a shared parenting plan, "the court in the best interest of the children may order the other parent to file a plan for shared parenting in accordance with division (G) of this section." R.C. 3109.04(D)(1)(a)(iii). "The approval of a plan under division (D)(1)(a) * * * (iii) of this section is discretionary with the court. * * * If the court * * * does not determine that any filed plan * * * is in the best interest of the children, the court shall not approve any plan." R.C. 3109.04(D)(1)(b).
 {¶ 13} "When making the allocation of the parental rights and responsibilities for the care of the children * * * in an original proceeding * * * the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). R.C.3109.04(F)(1)(a) — (j) provides the factors a court must consider in determining that which is in a child's best interest.
 {¶ 14} R.C. 3109.04(F)(2)(a) — (e) specifically requires the court to consider all of the following factors in determining whether shared parenting is in the best interest of the child:
 {¶ 15} "(a) The ability of the parents to cooperate and make decisions jointly, with *Page 6 
respect to the children;
 {¶ 16} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 17} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence; or parental kidnapping [sic] by either parent;
 {¶ 18} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 19} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 20} "The general R.C. 3109.04(F)(1)(a) — (j) `best interest' factors applicable to every custody determination relate primarily to the health and well-being of the child and the parents. The R.C.3109.04(F)(2)(a) — (e) factors set out above relate more specifically to the capacity of the parents to carry out a shared parenting plan.
 {¶ 21} "`Shared parenting' is the product of efforts to avoid the pain of loss inherent in the sole custody alternative, for both the parents and their child. It purports to continue, as nearly as possible, the joint parent and child relationships which exist in a marriage. Successful shared parenting requires at least two things. One is a strong commitment to cooperate. The other is a capacity to engage in the cooperation required. The R.C. 3109.04(F)(2) factors measure both components." Meyer v. Anderson, Miami App. No. 01CA53, 2002-Ohio-2782.
 {¶ 22} Having thoroughly reviewed the record herein, we find that the trial court gave careful consideration to the evidence presented, in the context of all relevant factors, before adopting Tammy's proposed shared parenting plan. The following witnesses provided testimony *Page 7 
before the court: Patrick and Kelly Leurs, next door neighbors and friends of James; Sue Zanders, another friend of James; Loidetta Butt, James' sister; James; Lisa Seibert, Tammy's sister; Rose Ann Seibert, Tammy's mother; and Tammy.
 {¶ 23} While James argues that the trial court failed to review the G.A.L. report (which is not before us), the trial court's decision reflects that the report was in fact considered, consistent with R.C.3109.04(F)(2)(e). The trial court's Decision notes the G.A.L concluded that shared parenting is in the children's best interest. According to the trial court, the G.A.L. recommended that James be designated the residential parent (and not "retain sole custody," as James' brief asserts) should the parties not agree to a shared parenting plan.
 {¶ 24} "`A trial court is not required to follow the recommendation of a guardian ad litem (Internal citations omitted). The function of a guardian ad litem is to consider the best interests of a child and to make a recommendation to the court, but the ultimate decision in any proceeding is for the judge, and the trial court does not err in making an order contrary to the recommendation of the guardian ad litem.'"In re D.W. and D.W., Montgomery App. No. 21630, 2007-Ohio-431. The trial court clearly considered the G.A.L.'s report and weighed it along with the factors set forth in R.C. 3109.04, and the trial court did not err in designating Tammy the children's residential parent contrary to the G.A.L.'s recommendation.
 {¶ 25} We further agree with Tammy that, while R.C.3109.04(D)(1)(a)(iii) provides that the trial court "may" order the other parent to file a plan for shared parenting, there is no requirement that it do so, as James suggests. "In statutory construction, the word `may' shall be construed as permissive and the word `shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their *Page 8 
ordinary usage." Fulmer Supermarkets v. Whitfield (Jan. 5, 1988), Montgomery App. No. 10397.
 {¶ 26} James also relies upon Stalnaker v. Stalnaker (Dec. 20, 1999), Stark App. No. 1999CA00059, for the proposition that the court was required to review a plan from each party. In Stalnaker, however, the court erred in issuing a shared parenting plan that was not submitted by either party; R.C. 3109.04(D)(1)(b) does not allow a court to create its own shared parenting plan. Herein the court adopted Tammy's shared parenting plan, and James' reliance upon Stalnaker is accordingly misplaced.
 {¶ 27} James next cites the trial court's failure to order the parties to mediate their dispute. In a proceeding for allocation of parental rights and responsibilities, "if the parents of the children do not agree upon an appropriate allocation of parental rights and responsibilities for the care of their children or do not agree upon a specific schedule of parenting time for their children, the courtmay order the parents to mediate their differences on those matters in accordance with mediation procedures adopted by the court by local rule." R.C. 3109.052 (emphasis added). It is not mandatory for the court to order mediation, and the trial court did not err in failing to do so. Of note is that the Plan the court adopted requires the parties to resolve "any major difference of opinion" by means of mediation or counseling.
 {¶ 28} Finally, James argues that he and Tammy, due to their inability to cooperate and make decisions jointly with respect to their children, are not appropriate candidates for shared parenting pursuant to R.C.3109.04(F)(2)(a). The trial court's Decision makes clear that the court carefully considered that the parties "have very little productive communication." Of primary dispute between them was the selection of an appropriate preschool for Briston. The *Page 9 
record reveals that James enrolled Briston in a Lebanon preschool because playmates of Briston's were enrolled there. The school day began at 9:00 a.m., and James asked Tammy if he could pick Briston up earlier than the regularly scheduled time of 9:00 a.m. on Briston's school days. Tammy refused and informed James that Briston was already enrolled at another school. When James contacted that school, he learned that Briston was in fact not enrolled there. James later learned that Briston was attending preschool at Christ United Methodist Church in Kettering. Tammy enrolled Briston in Kettering because her work schedule allowed her to drop Briston off there and pick him up. During his parenting time with Briston, James refused to take his son to the Kettering preschool during Briston's first year there, and he refused to share the expense with Tammy.
 {¶ 29} At the time of trial, the parties were again in disagreement as to the appropriate school setting for Briston as he enters kindergarten. James, however, indicated to the court that he and Tammy will be able to reach an agreement on an appropriate school setting for Briston. The designation of Tammy as the residential parent with the authority to determine school placement forecloses the possibility of multiple enrollments occurring in the future.
 {¶ 30} More importantly, "the ability of the parents to cooperate and make decisions jointly with respect to the children" is but one factor for the court to consider in allocating parental rights and responsibilities, and the court heard evidence going to the multiple factors cited above. For example, Patrick and Kelly Leurs, Sue Zanders and Loidetta Butt testified at length regarding their observations of James' positive involvement in the boys lives' and the loving relationship he enjoys with his sons. When asked how he feels about being a parent, James stated, "it's my life." Lisa Seibert and Rose Ann Seibert testified regarding the consistent *Page 10 
and appropriate care Tammy provides for her sons and her love for them. Tammy described all the activities she enjoys with her sons. Despite James' and Tammy's communication problems, as the trial court noted, the evidence makes clear that the boys interact with both parents appropriately, are in good health and well-behaved, and they are bonded to and enjoy time with each parent. The Plan that the court adopted allows the parties, as they did when an intact family, to maximize the time each spends with their children. Despite some inability to communicate, the trial court correctly noted that, during the pendency of their divorce, under their "de facto" shared parenting plan, the parties were "able to provide for the boys in a shared manner." The trial court further found "that each parent is a caring and appropriate parent with the ability to provide guidance, concern and a proper home life for the children." Therefore, the trial court did not abuse its discretion in adopting Tammy's proposed plan, a plan which maintains a schedule under which the children thrive.
 {¶ 31} For the foregoing reasons, James' sole assignment of error is overruled, and the judgment of the trial court is affirmed.
 ..........
WOLFF, P.J. and FAIN, J., concur.
Copies mailed to:
Steven T. Pierson
Kent J. Depoorter
 Hon. Denise L. Cross *Page 1