[Cite as *Castanien v. Castanien*, 2013-Ohio-1393.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### WYANDOT COUNTY

ERIN CASTANIEN, ET AL.,

    PLAINTIFFS-APPELLANTS,           CASE N0.  16-12-08

    v.

S. MICHAEL CASTANIEN,              O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Wyandot County Common Pleas Court
Domestic Relations Division
Trial Court No. 08-DR-0113

**Judgment Affirmed**

**Date of Decision:   April 8, 2013**

APPEARANCES:

    *Gary S. Wellbaum* for Appellants

    *Kevin P. Collins*  for Appellee

**SHAW, J.**

{¶1} Plaintiffs-appellants Erin Castanien, Tim Aller, and Jean Aller (collectively "appellants"), appeal the April 19, 2012, judgment of the Wyandot County Court of Common Pleas, Domestic Relations Division, granting Erin's ex-husband, Michael Castanien, custody of Erin and Michael's three children. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Erin and Michael were married April 22, 2003. They had three children together: Cole, born in April of 2004, and Macy and Drew, twins, born in October of 2006. On November 3, 2008, Erin filed a complaint for divorce. The divorce proceedings resulted in numerous hearings which concluded on January 12, 2010.[1] On February 10, 2010, the Magistrate presiding over the divorce filed a decision that, *inter alia*, granted custody of the parties' three children to Erin. (Doc. 64). Michael was granted parenting time according to the local rule. (*Id.*) On February 25, 2010, the trial court filed an entry stating that it had independently reviewed the Magistrate's decision and that the court adopted and approved the Magistrate's decision. (Doc. 65). The trial court ordered Erin's attorney to prepare an entry consistent with its holding for the court to review.[2] (*Id.*)

---

[1] Other hearings occurred May 4, 2009, August 19, 2009, November 10, 2009.
[2] That entry was prepared and filed on April 5, 2010. (Doc. 71).

**{¶3}** Subsequently, on March 5, 2010, a Friday evening, Erin attempted to commit suicide. Erin would later state that she made the decision to attempt suicide on the very day of her attempt while her children were napping, though she did not actually make the attempt until later Friday evening after Michael had retrieved the children from Erin's home for his weekend visitation around 6:00 P.M.

**{¶4}** On the night of the suicide attempt, when the children left Erin's residence with Michael, Erin wrote a suicide note, took some pills, and then went to lie down. In her attempt, Erin had to take additional pills more than one time. Erin was found by her mother the next day and was life-flighted and hospitalized. Erin does not recall any event from Friday evening until Sunday when she woke briefly and then went back to sleep.

**{¶5}** On March 11, 2010, Michael filed an "Exparte Motion for Emergency Custody" of the parties' three children arguing that Erin was hospitalized from her suicide attempt.[3] (Doc. 66). That same day, the motion was granted. (Doc. 69).

**{¶6}** While Erin was in the hospital recovering from her suicide attempt, cellulitis developed in her leg and she was treated for that. Erin remained in the hospital for two weeks, and then moved into the home of her parents where she has since resided. Prior to the suicide attempt, Erin had been living independently.

---

[3] The motion does not actually use the term "suicide," rather at this point the attempted suicide was referred to as an "overdose."

{¶7} On April 23, 2010, Michael filed a motion to reallocate parental rights and responsibilities, requesting that he be designated the legal and residential parent of the parties' three children. (Doc. 72).

{¶8} On June 9, 2010, a judgment entry was filed regarding temporary orders that continued Michael's temporary custody, but also gave Erin supervised visitation of the parties' children. (Doc. 86).

{¶9} On June 17, 2010, Erin requested the appointment of Mary Snyder as Guardian *ad Litem* ("GAL"), a private GAL on the court's approved appointment list. (Doc. 87). On June 18, 2010, that motion was granted and Mary Snyder was officially appointed. (Doc. 89); (Doc. 93).

{¶10} On June 22, 2010, Tim and Jean Aller, Erin's parents who she was residing with, filed a motion to intervene to request companionship or visitation rights with the parties' children. (Doc. 91). On July 12, 2010, that motion was granted. (Doc. 92).

{¶11} On August 24, 2010, Erin filed a "Motion for Reallocation of Parental Rights and Responsibilities."[4] (Doc. 97).

{¶12} On August 24, 2010, Tim and Jean Aller filed a "Motion for Grandparent companionship or visitation rights and/or temporary and/or permanent parenting time." (Doc. 98).

---

[4] This motion actually mischaracterizes Erin as Defendant in this matter, then later refers to her as the Plaintiff. (Doc. 97).

{¶13} On August 23, 2010, Mary Snyder filed a notice of filing of GAL report. (Doc. 96). The GAL's report stated, "[a]t this time, the undersigned cannot advise the Court as to which parent would make a better residential parent, as neither <u>currently</u> seems appropriate for the task. The undersigned suggests that the matter be continued for a period of three months and that during that time the children be placed in the temporary custody of Tim and Jean Aller." (Emphasis *sic*) (Plaintiff's Ex. 28). The GAL further recommended frequent unsupervised parenting time for both parents, and that Erin should move out of the Aller's home and establish her own residence. (Plaintiff's Ex. 28).

{¶14} A full evidentiary hearing on the post-decree change of custody motions pending before the court was conducted before the Magistrate on multiple dates: October 12, 2010, December 21, 2010, and February 16, 2011. The Magistrate heard testimony from the parties, Cole's kindergarten teacher, a speech therapist that evaluated Drew, an outpatient mental health therapist that worked with Erin, Erin's sister, the GAL, and the mother of each party. In addition, trial depositions were taken of medical doctors that worked with the children and Erin. Following the hearing on February 16, 2011, the parties were invited to file written closing arguments.

{¶15} On February 9, 2011, just before the last evidentiary hearing, the GAL filed a notice of filing a supplemental report. (Doc. 144). In this report, the

GAL argued that no change of circumstances had occurred and thus custody should revert back to Erin. (Plaintiff's Ex. 29). The report did not explicitly address the best interests of the children.

{¶16} On February 24, 2011, Michael filed his closing argument. (Doc. 151). On February 25, 2011, appellants filed their closing argument. (Doc. 152).

{¶17} On April 5, 2011, the Magistrate filed a 43 page decision granting Michael's motion for change of custody. (Doc. 153). In the decision, the Magistrate made extensive findings of fact based on the testimony and the record. The Magistrate then summarized the "change of circumstances" as follows:

> **In order to begin an analysis it must first be shown that a change in circumstance to the residential parent or the children ha[s] occurred. This is uncontroverted by the testimony, although Plaintiff fails to recognize the change. Plaintiff tried to kill herself. The children had to leave their home and live with Defendant. They had to change schools, adjust to a new environment, make new friends, and have a new schedule. All without any notice. Plaintiff was hospitalized for weeks. She now lives with her parents. She is not independent. Plaintiff is being supported financially and emotionally by her parents. There has been a change of circumstances.**

{¶18} The Magistrate then went on to discuss whether the benefit of the change outweighed the harm, specifically addressing each relevant best interest factor in R.C. 3109.04(F)(1). Some things the Magistrate found persuasive were health and behavioral improvements of the children while in the custody of Michael, Erin's mental health condition (which according to the Magistrate's

decision from the divorce, was not mentioned as an issue when originally determining custody), and Michael being more likely to facilitate parenting time. The Magistrate went on to discuss how her ultimate conclusion that it was in the children's best interest that Michael be granted custody differed from the GAL and why the Magistrate felt that determination was appropriate despite the GAL's recommendation.

{¶19} On April 19, 2011, appellants filed initial objections to the Magistrate's decision. (Doc. 154). On July 12, 2011, appellants filed supplemental objections to the Magistrate's decision. (Doc. 169). In total, there were over 100 objections to the Magistrate's decision. On July 27, 2011, Michael filed a memorandum opposing the objections. (Doc. 174).

{¶20} On December 1, 2011, the trial court filed a 33 page judgment entry after conducting its independent review and analysis of the decision in light of the objections.[5] (Doc. 177). In its entry, the court specifically addressed each objection, and then the court found that "the findings of fact set forth in the magistrate's decision, and as modified herein by the prior rulings on the objections, are supported by the evidence, and the court therefore adopts them in their entirety[.]"[6] (*Id.*) The court then adopted the Magistrate's award of custody

---

[5] The pages were not numbered and were hand counted.
[6] The entry not only dealt with appellants' objections, but the GAL's objections as well. In addition, the court addressed claims that the Magistrate was biased finding them without support.

of the parties' three children to Michael. The court did, however, remand the matter back to the Magistrate for further consideration of child support. (*Id.*)

**{¶21}** The court's judgment entry was appealed, but that appeal was ultimately dismissed for lack of a final appealable order as the Magistrate still had to address the child support issues upon remand. (Doc. 182).

**{¶22}** On February 1, 2012, the Magistrate held a hearing on the remanded child support issues. On February 27, 2012, a Magistrate's Decision was filed dealing with the remanded child support issues. (Doc. 183). On April 19, 2012, a final judgment entry was filed adopting the Magistrate's Decision, designating Michael legal custodian and residential parent of the parties' three children, and addressing the child support issues that had been remanded. (Doc. 186).

**{¶23}** It is from this judgment that appellants appeal, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY DISREGARDING, WITHOUT ANY VALID BASIS OR JUSTIFIABLE CAUSE, THE GUARDIAN *AD LITEM*'S REPORTS, RECOMMENDATIONS, AND TESTIMONY HEREIN THEREBY EFFECTIVELY LEAVING THE BEST INTERESTS OF THE CHILDREN HEREIN UNREPRESENTED IN THE TRIAL COURT PROCEEDINGS.**

**{¶24}** In their assignment of error, appellants argue that the trial court disregarded the GAL's reports, recommendations, and testimony and thereby

effectively dismissed the GAL. Specifically, appellants argue that four assertions by the Magistrate in the Magistrate's Decision were unfounded and were tantamount to dismissal of the GAL. Appellants argue that under the Rules of Superintendence, the Magistrate should have appointed another GAL to represent the best interests of the children.

**{¶25}** At the outset, we would begin by addressing the fact that in their brief and reply brief to this court, appellants cite no case law or statutory authority supporting their argument. Appellants loosely refer to Rule 48 of the Rules of Superintendence as guidelines supporting their argument.[7] However, we have previously held that "[t]he Rules of Superintendence 'do not have the same force as a statute or case law, but are rather purely internal housekeeping rules which do not create substantive rights in individuals or procedural law.'" *Heilman v. Heilman*, 3d Dist. No. 6-12-08, 2012-Ohio-5133, ¶ 33, quoting *Elson v. Plokhooy*, 3d Dist. No. 17-10-24, 2011-Ohio-3009, ¶ 40. Thus, appellants' reliance on the Rules of Superintendence under our own case law is misplaced as the rules do not create rights. In *Heilman* and *Elson*, this court has overruled assignments of error for solely relying on the Rules of Superintendence for support. Based upon our prior holdings, appellants cannot maintain their argument.

---

[7] This is the only "authority" appellants cite in their Table of Authorities in their brief.

{¶26} However, as appellants' argument is also without merit, we will also address it on its factual basis. In their brief, appellants direct us to look at four assertions in the Magistrate's decision that they say were unfounded. The particular assertions in the Magistrate's Decision that appellants refer to are taken from a portion where the Magistrate is discussing the GAL. The portion reads as follows:

> **[1] Given her frequent communication with Plaintiff, [2] her association with Plaintiff apart from her Guardian ad Litem duties, [3] making a criminal complaint against Defendant, and [4] her posture as an advocate for Plaintiff the Guardian ad Litem has lost her objectivity and this effects [*sic*] this Magistrate's acceptance of her report and her testimony.**

(Doc. 153).[8]

{¶27} Appellants argue that this segment illustrates that the Magistrate disregarded and effectively dismissed the GAL and that the assertions by the Magistrate are not supported by the record. Appellants do concede in their brief that the Magistrate is free to *disagree* with the GAL. Appellants are instead arguing that that this segment cited shows the Magistrate effectively dismissed the GAL and therefore left the best interests of the children unrepresented.

{¶28} Despite appellants' arguments, it is clear from the record that the GAL's testimony and recommendation were thoroughly analyzed and considered by the Magistrate and that the GAL was not "effectively dismissed." By the

---

[8] Numbers were added for ease of understanding of the four separate assertions appellants argue were unfounded.

language of the segment cited above, the Magistrate only stated that the considerations affected the acceptance of the GAL's report and testimony, not that they caused the Magistrate to completely disregard the GAL's opinions.

{¶29} In fact, the Magistrate's initial discussion of the GAL covers five pages of the Magistrate's Decision and details areas where the Magistrate disagreed with the GAL's conclusions. The segment appellants cite as improper is in the ninth paragraph of eleven consecutive paragraphs of the Magistrate's Decision addressing the GAL's testimony, reports, and recommendation. The following excerpts illustrate some other portions of the Magistrate's analysis through those pages:

> **The Guardian ad Litem found Plaintiff to be a prolific communicator and the Guardian ad Litem did not find anything Plaintiff told her to be untrue. The undersigned found differently, as Plaintiff was often inconsistent in her testimony and with the testimony of others.**

> **\* \* \***

> **The Guardian ad Litem believes if Plaintiff was mentally unable to deal with being custodial parent, that she would show signs in other areas, such as being disheveled, not being able to hold down a job, fighting with her parents. However, Plaintiff showed none of these signs prior to her suicide attempt.**

> **\* \* \***

> **The Guardian ad Litem believes everything Plaintiff told her, and did not believe things Defendant told her. Plaintiff told the Guardian ad Litem that certain clothing items came to her from Defendant in a certain way, and without any verification the**

> **Guardian ad Litem believed Plaintiff. The Guardian ad Litem did find Defendant's house to be immaculate and that Cole attends school clean. The Guardian ad Litem was surprised at how clean Defendant keeps his house, as she expected something consistent with pictures Plaintiff provided her.**

(Doc. 153).

{¶30} Later in the Magistrate's decision, as the Magistrate is addressing best interests of the children, the Magistrate *again* discusses the GAL's testimony, reports, and recommendation over four paragraphs spanning another four pages further illustrating why the Magistrate disagreed with the GAL. The following is an excerpt of that discussion:

> **The initial Guardian ad Litem report indicated that the children should reside with Third Party Defendant, Allers. The Guardian ad Litem also outlined several concerns she felt needed addressed. These concerns included Drew's speech issue and his medical issues regarding constipation. Defendant has addressed Drew's speech issues and they no longer are present. There was no testimony, outside Plaintiff, that Defendant is inappropriately managing Drew's functional constipation issues. Drew has the same issues with Defendant he had with Plaintiff and the doctor is not overly concerned with those issues at this point. The Guardian ad Litem also has concerns regarding the parties ability to effectively communicate. This is a concern for the undersigned as well. \* \* \* However, the Third Party Defendant that the Guardian ad Litem recommends the children live with have such a dislike for Defendant that Jean Aller can say NOTHING positive or nice about Defendant. Further Plaintiff lives with the Allers, so that recommendation essentially places the children with Plaintiff whom the Guardian ad Litem initially stated cannot care for them. That is not in the children's best interests.**

(Emphasis *sic*). (Doc. 153).

{¶31} Based on the discussion, there is nothing to suggest that the Magistrate wholly disregarded and "effectively dismissed" the GAL as the Magistrate went to great lengths to analyze the GAL's testimony and recommendations. The discussion shows that the Magistrate generally disagreed with the GAL rather than dismissed the GAL's conclusions altogether.

{¶32} Furthermore, we would note that the Magistrate's criticisms of the GAL, which appellants claim are inappropriate in a specific segment and tantamount to dismissal of the GAL, could be considered legitimate. In the segment appellants cite, the Magistrate points to the frequency of contact between Erin and the GAL. It is true from the record that far less contact occurred between Michael and the GAL. Also in her decision the Magistrate points out that the GAL knew more about the children in this case because her child was in the same class as one of the children in this case. The record also illustrates that the GAL and her child also happened to be at a birthday party wherein Erin and her child were attending. Moreover, it is undisputed that the GAL filed a criminal complaint against Michael and contacted children's services on behalf of Macy. No charges were ultimately brought and the children's services investigation found that any alleged wrongdoing on behalf of Michael was unsubstantiated. Finally, the trial court addressed the "bias" claim in its review of appellants'

objections, and found the Magistrate's interpretation to be reasonable. The trial court found that,

> **A review of both the initial and supplemental reports show that the GAL focuses on the change of circumstances issue, which is not appropriate in a GAL report and is strong evidence of bias towards a party rather than a focus on the best interests of the children. * * * The magistrate is free to accept or reject the GAL's recommendation, and to test the GAL's credibility**.

{¶33} Thus all of the Magistrate's findings that were cited as inappropriate were supported by the record and therefore could be considered to be legitimate criticisms made by the Magistrate.

{¶34} However, even if the criticisms were unfounded, and even if the Magistrate had somehow improperly disregarded the GAL's testimony, there was still significant evidence cited in the lengthy decision of the Magistrate supporting granting Michael custody. Therefore even if we found the assertions by the Magistrate regarding the GAL to be inappropriate and struck the portion of the Magistrate's decision containing them, the record still supports the ultimate outcome.

{¶35} For all of the foregoing reasons, appellants' assignment of error is overruled and the judgment of the Wyandot County Court of Common Pleas, Domestic Relations Division, is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**
/jlr