[Cite as *Merriman v. Merriman*, 2016-Ohio-3385.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

JACOB J. MERRIMAN,

    PLAINTIFF-APPELLEE,               CASE NO. 11-15-10

    v.

KATELYN A. MERRIMAN n.k.a. MAAG,      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Paulding County Common Pleas Court
Domestic Relations Division
Trial Court No. DIS12-223

**Judgment Affirmed**

Date of Decision: June 13, 2016

APPEARANCES:

    *Jennifer N. Brown* for Appellant

    *Matthew A. Cunningham* for Appellee

Case No. 11-15-10

**PRESTON, J.**

{¶1} Plaintiff-appellant, Katelyn A. Merriman, n.k.a. Katelyn A. Maag, ("Katelyn"), appeals the December 15, 2015 decision of the Paulding County Court of Common Pleas, Domestic Relations Division, reallocating Katelyn's and defendant-appellee's, Jacob J. Merriman ("Jacob"), parental rights and responsibilities. For the reasons that follow, we affirm.

{¶2} Jacob and Katelyn were married on August 17, 2010. (Doc. No. 1). Jacob and Katelyn filed a petition for dissolution of their marriage on October 26, 2012. (*Id.*). One child, ("K.M."), was born as issue of this marriage. (*Id.*). The trial court issued its final dissolution decree on February 26, 2013. (Doc. No. 9). In that, the trial court adopted the parties' separation agreement, which provided, with respect to K.M.:

> [Jacob] and [Katelyn] mutually agree no * * * child support shall be paid to or by either party. [Jacob] shall be designated residential parent of [K.M.]. [Katelyn] shall have parenting time as follows:
>
> First Friday of each month at 6 p.m. until the following Monday at 6 p.m. and on the following Wednesday at 6 p.m. until the following Friday at 6 p.m. and continuing on alternating 48 hour periods. [Jacob] shall have parenting time on the opposite alternasting [sic] 48 hour periods in conformity with the above.

[K.M.] shall remain in the Wayne Trace School District. [Katelyn] shall carry medical insurance on [K.M.] and the parties shall pay equally any amounts uncovered by insurance. The parties shall pay equally all amounts for school activities, fees, etc. [Jacob] shall pay all day care expenses for [K.M.].

(*Id.*).

{¶3} On August 15, 2014, Katelyn filed a motion for reallocation of parental rights and responsibilities. (Doc. No. 10). In her motion, Katelyn requested that the trial court conclude that it is in K.M.'s best interests that Katelyn "be designated as the residential parent and legal custodian of [K.M.]" and that her residence determine which school district K.M. is to attend. (*Id.*).

{¶4} On August 20, 2014, Jacob filed a motion requesting that the trial court appoint a guardian ad litem ("GAL") to represent K.M.'s best interest. (Doc. No. 17). The trial court granted Jacob's motion and appointed a GAL on September 2, 2014. (Doc. No. 18).

{¶5} On September 29, 2014, the trial court ordered the parties to continue the "parenting plan" as ordered in the final dissolution decree. (Doc. No. 21).

{¶6} On July 30, 2015, the GAL filed her confidential report. (Confidential GAL Report). (*See also* Doc. No. 39).

{¶7} The trial court held a bench trial on August 11, 2015. (Aug. 11 and 14, 2015 Tr. at 1, 4). The trial court issued an oral decision on August 14, 2015. (Aug. 11 and 14, 2015 Tr. at 1, 216).

{¶8} On August 20, 2015, Katelyn filed a motion requesting findings of fact and conclusions of law, which the trial court issued on September 24, 2015. (Doc. Nos. 42, 46). The trial court filed its judgment entry on December 15, 2015. (Doc. No. 49).

{¶9} Katelyn filed her notice of appeal on December 28, 2015. (Doc. No. 50). She raises one assignment of error for our review.

**Assignment of Error**

**The Paulding County Court of Common Pleas Abused its Discretion in Designating Appellee the Residential Parent for School Purposes and Primarily Awarding Appellee Parenting Time During the School Year Without Consideration or Addressing in its Ruling That the Guardian Ad Litem's Recommendations Were in Direct Conflict to the Court's Decision.**

{¶10} In her assignment of error, Katelyn argues that the trial court abused its discretion in reallocating parental rights and responsibilities. In particular, Katelyn argues that the trial court abused its discretion because it failed "to consider anywhere in its decision and anywhere in its discussion of the [R.C. 3109.04(F)(1) factors] any of the Guardian Ad Litem recommendations, especially

considering the Guardian Ad Litem recommendations were polar opposite of the trial court's ruling." (Appellant's Brief at 9-10).

{¶11} "Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities." *August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶ 22, citing *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8. R.C. 3109.04(E)(1)(a) governs modification of a prior decree allocating parental rights and responsibilities and provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i)   The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii)  The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

The statute creates a strong presumption in favor of retaining the residential parent designation and precludes a trial court from modifying a prior parental rights and responsibilities decree unless the court finds all of the following:  (1) a change occurred in the circumstances of the child, the child's residential parent, or a parent subject to a shared-parenting decree; (2) the change in circumstances is based upon facts that arose since the court entered the prior decree or that were unknown to the court at the time of the prior decree; (3) the child's best interest necessitates modifying the prior custody decree; and (4) one of the circumstances specified in R.C. 3109.04(E)(1)(a)(i)-(iii) applies.

*Rohrbach v. Rohrbach*, 3d Dist. Seneca No. 13-15-14, 2015-Ohio-4728, ¶ 15, citing *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, ¶ 14. "Thus, the threshold question in a parental rights and responsibilities modification case is whether a change in circumstances has occurred." *Id.*

{¶12} "'In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change.'" *Id.* at ¶ 16, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph two of the syllabus. "The determination that a change in circumstances has occurred for the purposes of R.C. 3109.04 'should not be disturbed, absent an abuse of discretion.'" *Id.*, quoting *Davis* at paragraph one of the syllabus. "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "However, the trial court's discretion is not absolute, and it must abide by R.C. 3109.04 in making decisions concerning custody." *Rohrbach* at ¶ 16, citing *Erwin v. Erwin*, 3d Dist. Union No. 14-04-37, 2005-Ohio-1603, ¶ 7, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

**{¶13}** "The statute requires that in allocating the parental rights and responsibilities, the court 'shall take into account that which would be in the best interest of the child[].'" *August*, 2014-Ohio-3986, at ¶ 22, citing *Self v. Turner*, 3d Dist. Mercer No. 10-06-07, 2006-Ohio-6197, ¶ 6, quoting R.C. 3109.04(B)(1). R.C. 3109.04(F)(1) describes ten factors that the trial court shall consider to determine the best interest of the child and provides:

> In determining the best interest of a child [under R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)   The child's adjustment to the child's home, school, and community;

(e)   The mental and physical health of all persons involved in the situation;

(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense

involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j). "Any additional relevant factors shall be considered as well." *August* at ¶ 23, citing R.C. 3109.04(F)(1) and (2).

**{¶14}** Decisions concerning child-custody matters also rest within the sound discretion of the trial court. *Krill*, 2014-Ohio-2577, at ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller*, 37 Ohio St.3d at 74. "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994).

**{¶15}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Id.* at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence."

*Id.*, citing *Meachem*, 2011-Ohio-519, at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22. "'[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors listed in R.C. 3109.04(F)(1).'" *Meachem* at ¶ 32, citing *Goodman v. Goodman*, 3d Dist. Marion No. 9-04-37, 2005-Ohio-1091, ¶ 18.

{¶16} "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton*, 3d Dist. Union No. 14-10-21, 2011-Ohio-2847, ¶ 20, citing *Clark v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 23, citing *In re Brown*, 98 Ohio App.3d 337 (3d Dist.1994). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark* at ¶ 23, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

{¶17} The parties do not dispute that the trial court made the appropriate change-of-circumstances findings; rather, the parties dispute only whether the trial court abused its discretion in designating Jacob as K.M.'s residential parent for school purposes without discussing why it was disagreeing with the GAL's recommendation. Accordingly, we will address only whether the trial court

abused its discretion by not specifically addressing in its best-interest analysis why it was not following the GAL's recommendation.

**{¶18}** As an initial matter, Katelyn failed to cite any authority in support of her argument other than loosely referring to Rule 48 of the Rules of Superintendence. "[W]e have previously held that '[t]he Rules of Superintendence "do not have the same force as a statute or case law, but are rather purely internal housekeeping rules which do not create substantive rights in individuals or procedural law."'" *Castanien v. Castanien*, 3d Dist. Wyandot No. 16-12-08, 2013-Ohio-1393, ¶ 25, quoting *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 33, quoting *Elson v. Plokhooy*, 3d Dist. Shelby No. 17-10-24, 2011-Ohio-3009, ¶ 40. Therefore, Katelyn's "reliance on the Rules of Superintendence under our own case law is misplaced as the rules do not create rights." *Id.* This court overruled assignments of error for relying solely on the Rules of Superintendence. *Id.*, citing *Heilman* ¶ 33-34 and *Elson* ¶ 40-41. As such, Katelyn's assignment of error fails to raise any reversible error of law. *See id.*; *Heilman* ¶ 33; *Elson* ¶ 40.

**{¶19}** Even were we to consider Katelyn's argument in the interest of justice, we would conclude that her argument is meritless. "'[A] trial court is not bound to follow a guardian ad litem's recommendation.'" *Bomberger-Cronin v. Cronin*, 2d Dist. Greene, No. 2014-CA-4, 2014-Ohio-2302, ¶ 27, quoting *Lumley*

*v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. *See also Castanien* at ¶ 26. "'The function of a guardian ad litem is to consider the best interests of a child and to make a recommendation to the court, but the ultimate decision in any proceeding is for the judge, and the trial court does not err in making an order contrary to the recommendation of the guardian ad litem.'" *Koller v. Koller*, 2d Dist. Montgomery No. 22328, 2008-Ohio-758, ¶ 24, quoting *In re D.W. and D.W.*, 2d Dist. Montgomery No. 21630, 2007-Ohio-431, ¶ 24 .

> "As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation. Because assessment of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's decision to disregard the guardian ad litem's recommendation."

*Cronin* at ¶ 27, quoting *Lumley* at ¶ 46, citing *Davis*, 77 Ohio St.3d at 419. Katelyn concedes in her reply brief that the trial court is free to disagree with the GAL's recommendation. (Appellant's Reply Brief at 4). Yet she argues that the trial court abused its discretion by disagreeing with the GAL's recommendation "without at least some explanation and rationalization." (*Id.*).

{¶20} Despite Katelyn's argument, the trial court explicitly addressed its best-interest findings. *See Krill*, 2014-Ohio-2577, at ¶ 29. Indeed, the trial court

considered the GAL's report, as well as the testimony and evidence presented at the August 11, 2015 hearing, and weighed that evidence with the R.C. 3109.04 factors. (Aug. 11 and 14, 2015 Tr. at 217); (Doc. Nos. 46, 49). Therefore, the trial court did not abuse its discretion in designating Jacob as K.M.'s residential parent for school purposes.

{¶21} To the extent that Katelyn argues that the trial court abused its discretion by disagreeing with the GAL's recommendation, her argument is also meritless. The GAL recommended in her July 30, 2015 written report, and at the August 11, 2015 hearing, that Katelyn be designated as K.M.'s residential parent for school purposes. (Confidential GAL Report); (Aug. 11 and 14, 2015 Tr. at 26). The parties had the opportunity to cross-examine the GAL at the hearing. *See In re Z.B.*, 2d Dist. Champaign No. 09-CA-42, 2010-Ohio-3335, ¶ 36. The trial court apparently found the GAL's report and testimony less credible than the evidence that Jacob should be designated as K.M.'s residential parent for school purposes, which it was free to do. *See Matter of Oard*, 3d Dist. Putnam No. 12-82-4, 1983 WL 4546, *4 (Dec. 28, 1983) ("the ultimate decision was for the trial court [and] the trial court did not err in arriving at a decision other than that recommended by the guardian ad litem").

{¶22} Notwithstanding the GAL's recommendation, the trial court concluded that it is in K.M.'s best interest to designate Jacob as K.M.'s residential

parent for school purposes. In particular, the trial court found the following R.C. 3109.04(F)(1) factors relevant to its decision: R.C. 3109.04(F)(1)(a), Jacob and Katelyn both expressed a desire to be K.M.'s residential parent for school purposes; R.C. 3109.04(F)(1)(c), K.M. has healthy relationships with Jacob and Katelyn and a "significant relationship with her paternal grandparents"; R.C. 3109.04(F)(1)(d), K.M. has been exclusively raised in Payne, Ohio and attended pre-school in the Wayne Trace School District; R.C. 3109.04(F)(1)(h), Jacob and his girlfriend have a history of domestic violence, but that incident did not involve K.M., and K.M. was not present during the altercation; R.C. 3109.04(F)(1)(j), while neither parent presented evidence that they intended to move outside the state, the trial court considered Katelyn's move to Ottawa, Ohio as the reason for her motion requesting the reallocation of parental rights and responsibilities regarding the school district that K.M. is to attend. (Doc. No. 46). The trial court concluded that R.C. 3109.04(b), (e), (f), (g), and (i) are inconsequential to its best-interest analysis. (*Id.*). The trial court further found that Katelyn's move to Ottawa, Ohio "appears to be only a temporary move until she moves onto her next relationship" and that "[k]eeping [K.M.] within the Wayne Trace School system is the most stable alternative at this time [since K.M.] attended pre-school within the Wayne Trace School system." (*Id.*).

{¶23} Nevertheless, Katelyn appears to further argue, without citation to authorities, that the trial court abused its discretion by designating Jacob as K.M.'s residential parent for school purposes by essentially permitting K.M.'s paternal grandparents to assert "their rights via a back door" because evidence was presented at the August 11, 2015 hearing that K.M.'s paternal grandparents "were acting for their son as 'parents' during his parenting time." (Appellant's Brief at 19). Katelyn's argument is misplaced.

{¶24} One of the best-interest factors that the trial court is to consider is "[t]he child's interaction and interrelationship with * * * any other person who may significantly affect the child's best interest." R.C. 3109.04(F)(1)(c). Indeed, the trial court found that Jacob and Katelyn both played a role in the significant relationship that K.M. has with her paternal grandparents. (Doc. No. 46). In particular, the trial court found that Katelyn used K.M.'s paternal grandparents for child care to provide Katelyn time without K.M. to pursue her own interests. (*Id.*). Katelyn appears to further challenge the trial court's decision by arguing that the trial court placed too much weight on K.M.'s relationship with her paternal grandparents. However, it is within the trial court's discretion to determine which factors are relevant and the weight each factor carries based on the facts before it. *Krill*, 2014-Ohio-2577, at ¶ 29. Accordingly, it was not an abuse of discretion for the trial court to consider K.M.'s relationship with her paternal grandparents in its

best-interest analysis and decision to designate Jacob as K.M.'s residential parent for school purposes. *See Heilman*, 2012-Ohio-5133, at ¶ 29 (considering the close bond the child formed with his great-grandparents, who cared for him while his mother was working, in the trial court's best-interest analysis); *August*, 2014-Ohio-3986, at ¶ 24 (considering the child's "strong and continuing relationship with his paternal grandparents" in the trial court's best-interest analysis).

{¶25} Therefore, the trial court did not abuse its discretion in designating Jacob as K.M.'s residential parent for school purposes.

{¶26} Katelyn's assignment of error is overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J., concurs.**


**ROGERS, J., Concurring Separately.**

{¶28} I concur with the result reached by the majority on the specific issue contained in Appellant's sole assignment of error. I write separately to address an apparent oversight by the trial court.

{¶29} The motion before the court was the reallocation of parental rights and responsibilities. As noted by the majority, a change of residential parent

requires a finding of a change of circumstances. Nowhere in the trial court's judgment entry or its findings of fact and conclusions of law is any mention made of a change of circumstances. This omission is immaterial to the specific assignment of error because the trial court retained the same residential parent for school purposes as was designated in the original shared parenting order.

{¶30} However, the trial court did change the designation of primary residential parent from father only to each parent being the residential parent when the child is in their care. Such a change would require a finding of a change of circumstances, as well as other findings pursuant to R.C. 3109.04(E)(1)(a). Absent the required findings, the change of designation of primary residential parent is error.

{¶31} However, the lack of the necessary findings was not raised by either party, and the Appellee failed to file a cross-appeal, so that issue has become moot.

**/jlr**