[Cite as *Rohrbach v. Rohrbach*, 2015-Ohio-4728.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

MICHAEL ROBERT ROHRBACH,

    PLAINTIFF-APPELLANT,                  CASE NO. 13-15-14

    v.

STEPHANIE ANN ROHRBACH,             O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Domestic Relations Division
Trial Court No. 2012 DR 0005

Judgment Reversed and Cause Remanded

Date of Decision: November 16, 2015

APPEARANCES:

    *John C. Filkins* for Appellant

{¶1} Plaintiff-appellant, Michael R. Rohrbach ("Michael"), appeals the March 31, 2015 judgment of the Seneca County Court of Common Pleas overruling his objections to the magistrate's decision and granting the motion to modify custody filed by defendant-appellee, Stephanie A. Rohrbach ("Stephanie"). On appeal, Michael argues that the trial court erred in finding a change in circumstances warranting the modification of the court's prior custody decree.

{¶2} The parties were divorced on August 31, 2012. At that time, the parties entered into a shared parenting plan regarding the custody of their two minor children. The shared parenting plan stated the following regarding the children's living arrangements.

**3. LIVING ARRANGEMENTS**

**Both parties shall be designated the residential parent and legal custodian of the minor children. First and foremost the children's living arrangements shall be as the parties can agree. In the event the parties cannot agree then the living arrangements shall be as follows:**

**Mother shall have parenting time with the minor children as set forth in Local Court Rule 40 and additional time when Father is absent from the home for more than four hours. Mother and Father agree to give deference to the needs and desires of the children as it pertains to the exercise of parenting time.**

(Doc. No. 76 at 2).

{¶3} Michael was named the child support obligor for purposes of the shared parenting plan and was determined to have an annual child support obligation of $2,410.54. However, the parties agreed to deviate child support to zero dollars. Michael also agreed to pay seventy percent of the children's school fees, school expenses, and fees and expenses for extracurricular activities. The shared parenting plan stated that Michael was to provide health insurance for the children and that each party shall provide a reasonable amount of clothing for the children.

{¶4} In 2013, the parties' oldest child graduated high school and was emancipated.

{¶5} On August 12, 2014, Stephanie filed a "Motion for Modification of Shared Parenting Plan and Motion for Child Support." In this motion, Stephanie alleged that a change in circumstances had occurred since the prior parenting decree pertaining to their youngest child, Kali, who was sixteen-years-old at the time of the filing. Specifically, Stephanie claimed that Kali had changed her living arrangements and now resided in Stephanie's home full-time, whereas before Kali was primarily living with Michael. Stephanie asserted that Michael refused to pay for Kali's basic necessities and other obligations which in turn had created a financial hardship on her. Stephanie also maintained that modification of the prior custody order was in Kali's best interest. Stephanie requested that the

trial court designate her as Kali's residential parent and issue an order obligating Michael to pay her child support.

{¶6} On December 15, 2014, the magistrate conducted an evidentiary hearing on Stephanie's motion for modification where each party provided testimony and submitted exhibits relating to their incomes and financial positions. The testimony revealed that up until June of 2014 the parties had exercised their parenting time with Kali as follows. During the week Kali resided with Michael. Specifically, Michael drove Kali to school in the morning and Stephanie picked her up from school or her extracurricular activities in the afternoon. Stephanie spent time with Kali until 8:00 p.m. or 9:00 p.m. at which time she returned Kali to Michael's residence for the night. One of the primary reasons for implementing this schedule was that Stephanie worked from 5:00 a.m. to 1:00 p.m. and could not take Kali to school in the morning. Therefore, Kali stayed overnight with Michael during the week so that he could provide her with transportation to school. The parties then exercised their respective parenting time with Kali on alternating weekends.

{¶7} This schedule changed in June of 2014 when Kali finished the school year and when she turned sixteen-years-old and received her operator's license. Kali purchased her own vehicle and drove herself to her summer job. Kali also started primarily residing with Stephanie, but still visited Michael several times a

week. Once the 2014-2015 school year began, Kali no longer needed Michael to take her to school and continued to reside primarily with Stephanie.

{¶8} Stephanie testified at the hearing that she had asked Michael to pay for some of Kali's expenses, such as clothing and school supplies, but he refused. She stated that she paid for Kali's car insurance and maintained that Michael failed to provide his share of financial support for Kali's day to day and incidental expenses. Michael disputed this contention. He testified that he paid for Kali's cell phone bill and had paid for her school expenses and clothing when asked. He also claimed to give Kali spending money multiple times a week ranging from $10.00 to $40.00 and provided Kali with meals when she visited him. As for Kali's medical expenses, the testimony at the hearing indicated that Michael was no longer employed at the job he had when the prior custody decree was issued and his current employer did not provide private health insurance. Due to neither party being able to afford private health insurance, Kali was insured under the "Buckeye Card."

{¶9} Michael testified that in July of 2014, approximately two weeks after Kali began consistently residing overnight at Stephanie's house, Stephanie called him and demanded that he give her money to meet the increased daily cost to support Kali. A month later, Stephanie filed this motion to modify the prior custody order. Michael maintained that there was no disagreement between the

parties regarding either the shared parenting plan or with whom Kali would reside. He also stated that he continued to have a good relationship with Kali and she visited him every other day for a few hours. He acknowledged that Kali spent more time with Stephanie since the summer of 2014, but also stated that up until that point Kali had primarily resided with him since the divorce in 2012. The record also indicates that Kali continued to perform well academically after she decided to change her living arrangements and did not appear to be adversely affected by the new custody schedule.

{¶10} On December 23, 2014, the magistrate issued his decision on the matter. The magistrate noted in his decision that he had conducted an *in-camera* interview with Kali in which she had expressed her wish "to continue living full-time with her mother, and to see her father as she desires." (Doc. No. 117 at 3). The magistrate concluded that a change in circumstances had occurred based on Kali's decision to change her living arrangements and recommended that Stephanie be designated the residential parent and Michael be designated the non-residential parent. The magistrate also recommended that a child support order be issued obligating Michael to provide Stephanie with a monthly child support payment.

{¶11} On January 6, 2015, Michael filed preliminary objections to the magistrate's decision, which were later supplemented with the filing of the hearing

transcript. Michael argued Stephanie "failed to establish that a change of circumstances of sufficient significance to warrant a modification of the prior shared parenting plan" had occurred. (Doc. No. 128 at 3). The trial court subsequently overruled Michael's objections and in its March 31, 2015 judgment entry adopted the magistrate's decision and issued orders in accordance with that decision. The trial court granted Stephanie's motion for modification of the shared parenting plan and motion for child support and ordered the following:

> **The Plan should be modified. Defendant should be designated the Child's primary residential parent, and Plaintiff should be designated the non-residential parent. Parenting time under the Plan should be as the parties can agree, and if they cannot agree, then in accordance with the Seneca County Local Rules of Court, with Defendant be allotted the time designated for the residential parent, and Plaintiff be allotted the time designated to the non-residential parent.**

(Doc. No. 130 at 4). The trial court ordered that Michael be responsible for a monthly child support obligation of $343.33 when private health insurance is being provided, and a monthly child support obligation of $310.95 plus $80.00 in cash medical support when private health insurance is not being provided.

{¶12} Michael subsequently filed this appeal, asserting the following assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN MODIFYING THE PARTIES' SHARED PARENTING PLAN AND ORDERING THE APPELLANT TO PAY CHILD**

**SUPPORT WHEN THERE HAD BEEN NO CHANGE IN CIRCUMSTANCES WHICH WERE NOT CONTEMPLATED AT THE TIME OF THE ISSUANCE OF THE SHARED PARENTING PLAN.**

{¶13} On appeal, Michael argues that the evidence at the hearing was insufficient to establish that a change in circumstances had occurred in order to modify the parties' shared parenting plan approved by the trial court in their 2012 divorce decree.

{¶14} Section 3109.04(E)(1)(a) of the Revised Code governs the modification of a prior custody decree and states:

> **The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> **(i)   The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.**
>
> **(ii)   The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.**

**(iii)** **The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

{¶15} The statute creates a strong presumption in favor of retaining the residential parent designation and precludes a trial court from modifying a prior parental rights and responsibilities decree unless the court finds all of the following: (1) a change occurred in the circumstances of the child, the child's residential parent, or a parent subject to a shared-parenting decree, (2) the change in circumstances is based upon facts that arose since the court entered the prior decree or that were unknown to the court at the time of the prior decree; (3) the child's best interest necessitates modifying the prior custody decree; and (4) one of the circumstances specified in R.C. 3109.04(E)(1)(a)(i)-(iii) applies. *In re Brayden James*, 113 Ohio St.3d 420, 2007–Ohio–2335, ¶ 14. Thus, the threshold question in a parental rights and responsibilities modification case is whether a change in circumstances has occurred.

{¶16} "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph two of the syllabus. The determination that a change in circumstances has occurred for the purposes of R.C. 3109.04 "should not be disturbed, absent an abuse of discretion." *Id*. at paragraph

one of the syllabus. "Abuse of discretion" implies that the decision rendered was arbitrary or unreasonable. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). However, the trial court's discretion is not absolute, and it must abide by R.C. 3109.04 in making decisions concerning custody. *Erwin v. Erwin*, 3d Dist. Union No. 14-04-37, 2005-Ohio-1603, at ¶ 7, citing *Miller* at 74.

{¶17} With these parameters in mind, we turn to the instant case to review whether the record establishes that a change in circumstances occurred within the meaning of the statute to warrant a modification of the parties' shared parenting plan. The trial court made the following finding relative to the change in circumstances inquiry:

> **Based upon the testimony and evidence received, the Court finds that, based upon facts that have arisen since the filing of the Decree, namely that the Child resides with Defendant, and does not regularly exercise parenting time with Plaintiff for visits any more than 2 to 3 hours in length, that a change in circumstances has occurred, and that it is in the best interest of the Child that the prior Plan be modified. Any negative effects of a modification of the Plan are outweighed by benefits to the Child.**

(Doc. No. 130 at 3).

{¶18} The only "change in circumstances" identified by the trial court in its judgment entry was Kali's decision to modify her living arrangements. Specifically, Kali's choice to reside in Stephanie's home full-time instead of in Michael's, where she had been primarily living since the prior custody decree. At the outset, we note it is generally recognized that a child's wishes regarding

custody *standing alone* are not enough to constitute a change in circumstances. *See McLaughlin v. McLaughlin—Breznenick*, 3d Dist. Logan No. 8-06-06, 2007-Ohio-1087, ¶ 28, citing *Moyer v. Moyer*, 10th Dist. Franklin No. 96APF05-659 (Dec. 17, 1996); *see also Pryor v. Hooks,* 9th Dist. Summit No. 25294, 2010-Ohio-6130, at ¶ 10 (rejecting the argument that a change in age coupled with a desire to live with a different parent, absent any other factors bearing on the circumstances of the child or the child's residential parent, constitutes a per se change in circumstances). The reason for this is that "a child's wishes are often transitory; to allow a change in a child's wishes automatically to serve as a change of circumstances for purposes of R.C. 3109.04(E)(1)(a) might cause the constant relitigation of issues which the 'change in circumstances' requirement is designed to avoid." *Butland v. Butland*, 10th Dist. Franklin No. 95APF09-1151 (June 27, 1996). This is all the more applicable in the present case, where Kali's age, complete mobility, and good relationship with both parents could readily enable her to change her living circumstances between the two parents at any time.

{¶19} Moreover, even though R.C. 3109.04 does not provide a definition of the phrase "change in circumstances," Ohio courts have held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *See e.g., Haskett v. Haskett*, 11th Dist. Lake No. 2011–L–155, 2013-Ohio-145, ¶ 35, citing *Wyss v. Wyss*, 3 Ohio App.3d 412 (10th

Dist.1982). To this end, the change in circumstances necessary to justify a modification of a prior decree "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Here, the record does not demonstrate nor does the trial court indicate that a change of substance occurred with respect to Kali's circumstances which had a material and adverse effect on *her*. To the contrary, the evidence at the hearing suggests that Kali continued to perform well academically and maintained good relationships with both her parents after she decided in the summer of 2014 to live full-time in Stephanie's home.

{¶20} Arguably, the only indication of any change of substance or any situation having a material and adverse effect, which was not relied upon by the trial court, was the change in Michael's and Stephanie's finances. The evidence at the hearing showed that Michael had changed jobs since the prior parenting decree and now earned significantly less than he did before and no longer obtained private health insurance through his employment. For her part, Stephanie claimed to have suffered a financial hardship since Kali decided to regularly live with her. However, we note that there was a lack of evidence at the hearing sufficiently quantifying the increased financial need Stephanie experienced as a result of Kali's decision to change her living arrangements and, notably, less than two months had transpired between the time Kali decided to change her living

arrangements and Stephanie's filing of her motion to modify the prior custody order. Nevertheless, while the record may suggest that *both* parents suffered financial obstacles since the prior custody decree, the evidence simply does not support that Kali had been negatively impacted by this "change" in anyway, which is the clearly the pertinent inquiry under the statute.

{¶21} The record also fails to support that the trial court's "change in circumstances" finding satisfied the second element of the statute which requires the "change" to be based upon facts that have arisen or that were unknown to the court at the time of the prior decree. The Supreme Court of Ohio has expressed that "[t]his is a high standard, as a 'change' must have occurred in the life of the child or the parent before the court will consider whether the current designation of residential parent and legal custodian should be altered." *Fisher v. Hasenjager*, 116 Ohio St. 3d 53, 59-60, 2007-Ohio-5589, ¶ 33.

{¶22} Here, the parties' prior shared parenting plan contemplated the two events which formed the basis for the trial court's conclusion that a "change in circumstances" had occurred. First, the parties' prior custody decree specified that "[f]irst and foremost the children's living arrangements shall be as the parties can agree." The decree then explicitly provided for the custody arrangements "[i]n the event the parties cannot agree." (Doc. No. 76 at 2). Second, the prior custody decree stated that "Mother and Father agree to give deference to the needs and

desires of the children as it pertains to the exercise of parenting time." (Id.) Thus, the parties' prior custody decree clearly anticipated the circumstances identified by the trial court as its "change in circumstances" finding—i.e., Kali's decision to live with one parent over the other—and incorporated the appropriate flexibility into the exercise of parenting time to prevent future litigation if the situation arose. We also note that only two years had passed since the trial court issued the prior decree when Stephanie filed her motion for modification. Thus, the parties were not so far removed from the previous order to suggest that the intent to address the specific circumstances foreseen in that order had somehow been affected by the passage of time.

{¶23} In sum, R.C. 3109.04(E)(1)(a) precludes a trial court from modifying a prior custody decree unless it finds that a change based upon facts that have arisen or that were unknown to the trial court since the time the court entered the prior decree has occurred in the circumstances of the child or the parents subject to a shared parenting decree. We conclude that the record in this case simply does not support the trial court's determination that a change in circumstances had occurred based solely upon the child's desire to live with one parent over the other, especially when such an event was specifically contemplated by the prior shared parenting plan, and absent any other evidence that there was a change of substance which had a material and adverse effect on the child.

{¶24} Accordingly, we find that the trial court erred in finding that a change in circumstances within the meaning of the statute had occurred in this case sufficient to warrant the modification of the parties' prior custody decree. Therefore we sustain the assignment of error and the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**