[Cite as *Huffman v. Eachus*, 2019-Ohio-910.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

JOSEPH HUFFMAN,

    PLAINTIFF-APPELLANT,          CASE NO.  13-18-32

    v.

KAYLA EACHUS,                    O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No. 21470123

**Judgment Affirmed**

**Date of Decision:   March 18, 2019**

APPEARANCES:

    *James W. Fruth* **for Appellant**

    *John M. Kahler, II* **for Appellee**

**PRESTON, J.**

{¶1} Father-appellant, Joseph Huffman ("Huffman"), appeals the September 5, 2018 judgment of the Seneca County Court of Common Pleas, Juvenile Division, overruling his objections to the magistrate's June 11, 2018 decision recommending that his motion to modify custody be denied. For the reasons that follow, we affirm.

{¶2} Huffman and mother-appellee, Kayla Eachus ("Eachus"), have a minor son, A.E., who was born on June 5, 2014. Huffman and Eachus have never married.

{¶3} On February 13, 2015, the magistrate issued a decision recommending that Eachus be designated as A.E.'s residential parent and legal custodian and that Huffman be afforded visitation with A.E. as agreed on by Huffman and Eachus or, if they could not reach an agreement, in accordance with Seneca County Juvenile Court Rule 8. (Doc. No. 22). That same day, the trial court approved and adopted the magistrate's recommendation. (Doc. No. 23).

{¶4} On January 19, 2018, Huffman filed a motion for reallocation of parental rights and responsibilities and a motion for emergency custody of A.E. (Doc. No. 28). In support of his motions, Huffman alleged that Eachus had "been indicted on felonies of the first and second degree * * * and * * * incarcerated at the Seneca County Jail." (*Id.*); (Doc. No. 28, Ex. 1). That same day, the magistrate granted Huffman's motion for emergency custody and awarded temporary custody of A.E. to Huffman. (Doc. No. 32). On January 24, 2018, a hearing was held to

review the magistrate's January 19, 2018 emergency custody order. (Doc. No. 36). That same day, the magistrate vacated the January 19, 2018 emergency order and awarded temporary custody of A.E. to Huffman. (*Id.*). In addition, the magistrate ordered that Eachus be allowed visitation with A.E. as agreed upon by Huffman and Eachus or, if the parties could not agree on a visitation schedule, at least once per week under supervision at Patchworks House in Tiffin, Ohio. (*Id.*). On January 26, 2018, the magistrate issued a nunc pro tunc order correcting a typographical error in the January 24, 2018 order. (Doc. No. 39).

{¶5} On April 10, 2018, Eachus filed a motion to modify temporary orders requesting that she be awarded parenting time with A.E. in accordance with Seneca County Juvenile Court Rule 8. (Doc. No. 48). In support of her motion, she noted that the criminal charges against her had been dismissed, that she had been released from the Seneca County Jail, and that she and Huffman could not agree on parenting time. (*Id.*); (Doc. No. 48, Ex. A). That same day, Eachus filed a motion for shared parenting along with a proposed shared-parenting plan. (Doc. No. 49). On April 11, 2018, Huffman filed a memorandum in opposition to Eachus's motion to modify temporary orders. (Doc. No. 51). On April 12, 2018, the magistrate denied Eachus's motion to modify temporary orders. (Doc. No. 52).

{¶6} On April 11, 2018, Huffman filed a motion requesting that the trial court appoint a guardian ad litem ("GAL") for A.E. (Doc. No. 50). On April 13, 2018,

the magistrate granted Huffman's motion to appoint a GAL for A.E. (Doc. No. 53). On April 16, 2018, the trial court appointed a GAL for A.E. (Doc. No. 54). The GAL filed her reports on June 1 and 4, 2018. (Doc. Nos. 57, 58).

{¶7} A hearing on Huffman's motion for reallocation of parental rights and responsibilities and Eachus's motion for shared parenting was held on June 7, 2018. (*See* Doc. No. 59); (*See* June 7, 2018 Tr. at 1). On June 11, 2018, the magistrate issued a decision recommending that Huffman's motion for reallocation of parental rights and responsibilities and Eachus's motion for shared parenting be denied, that the January 24, 2018 temporary orders be vacated, and that the trial court's February 13, 2015 order designating Eachus as A.E.'s residential parent and legal custodian and awarding visitation to Huffman be reinstated. (Doc. No. 59).

{¶8} On June 12, 2018, Huffman filed objections to the magistrate's June 11, 2018 decision. (Doc. No. 61). On August 9, 2018, Huffman filed a supplemental brief in support of his objections to the magistrate's June 11, 2018 decision. (Doc. No. 66). On August 21, 2018, Eachus filed a brief in opposition to Huffman's objections to the magistrate's June 11, 2018 decision. (Doc. No. 67).

{¶9} On September 5, 2018, the trial court overruled Huffman's objections to the magistrate's June 11, 2018 decision. (Doc. No. 68). Thus, the trial court denied Huffman's motion for reallocation of parental rights and responsibilities and Eachus's motion for shared parenting, vacated the January 24, 2018 temporary

orders, and reinstated the February 13, 2015 order designating Eachus as A.E.'s residential parent and legal custodian and awarding visitation to Huffman. (*Id.*).

{¶10} Huffman filed a notice of appeal on September 14, 2018. (Doc. No. 69). He raises one assignment of error.

### Assignment of Error

**The Seneca County Juvenile Court erred in overruling Appellant/Father's objection to the magistrate's decision when the magistrate's decision was unsupported by facts in the record, the decision was unsupported by law, and constituted an abuse of discretion.**

{¶11} In his assignment of error, Huffman argues that the trial court abused its discretion by denying his motion for reallocation of parental rights and responsibilities. Specifically, Huffman argues that the record does not support the trial court's findings that he failed to facilitate visitation with A.E.'s maternal grandparents and that Eachus did not act in a manner that resulted in a child being an abused or neglected child. (Appellant's Brief at 13-17). In addition, he argues that the trial court improperly considered his second-shift work schedule as a factor that weighs against designating him as A.E.'s residential parent. (*Id.* at 18).

{¶12} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-

Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶13}** Because this case concerns the trial court's decision whether to modify an existing custody decree, the trial court's decision-making process was controlled by R.C. 3109.04(E). R.C. 3109.04(E) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either

of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a)(i)-(iii). R.C. 3109.04(E) "'creates a strong presumption in favor of retaining the residential parent designation * * *.'" *Polhamus v. Robinson*, 3d Dist. Logan No. 8-16-11, 2017-Ohio-39, ¶ 27, quoting *Rohrbach v. Rohrbach*, 3d Dist. Seneca No. 13-15-14, 2015-Ohio-4728, ¶ 15, citing *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, ¶ 14. The statute

precludes a trial court from modifying a prior parental rights and responsibilities decree unless the court finds all of the following: (1) a change occurred in the circumstances of the child, the child's residential parent, or a parent subject to a shared-parenting decree[;] (2) the change in circumstances is based upon facts that arose since the court entered the prior decree or that were unknown to the court at the time of the prior decree; (3) the child's best interest necessitates modifying the prior custody decree; and (4) one of the circumstances specified in R.C. 3109.04(E)(1)(a)(i)-(iii) applies.

*Rohrbach* at ¶ 15, citing *In re Brayden James* at ¶ 14.

**{¶14}** Here, the trial court agreed with the magistrate's conclusion that a change in circumstances had occurred since the initial custody determination due to "neglect of [A.E.'s] ongoing dental care; [Eachus's] use of marijuana in 2017; and [Eachus's] involvement in criminal activities that have caused her to be arrested and serve 77 days in jail." (Doc. Nos. 59, 68). Neither Huffman nor Eachus contest the trial court's conclusion that a change in circumstances had occurred since the initial custody determination. In addition, because the trial court concluded that a modification of Huffman's and Eachus's parental rights and responsibilities is not in A.E.'s best interest, the trial court did not determine whether any of the circumstances in R.C. 3109.04(E)(1)(a)(i)-(iii) apply. Thus, the sole issue on appeal

is whether the trial court abused its discretion by adopting the magistrate's recommendation and concluding that the modification requested by Huffman is not in A.E.'s best interest.

{¶15} The factors that a trial court must consider when determining whether a modification is in a child's best interest are listed in R.C. 3109.04(F)(1), which provides:

> In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a)   The wishes of the child's parents regarding the child's care;
>
> (b)   If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)  The child's adjustment to the child's home, school, and community;

(e)  The mental and physical health of all persons involved in the situation;

(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)  Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense

was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j).

{¶16} "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-

Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Id.*, citing *Meachem*, 2011-Ohio-519, at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22.

{¶17} In objecting to the magistrate's recommendation, Huffman argued that only the magistrate's R.C. 3109.04(F)(1)(d), (f), and (h) best-interest findings are not supported by the evidence; he did not take issue with the balance of the magistrate's R.C. 3109.04(F)(1) best-interest findings. (*See* Doc. No. 66). Huffman further argued that the magistrate's recommendation that Eachus remain as A.E.'s residential parent is faulty because the magistrate gave too much weight to Huffman's work schedule and supposed reluctance to facilitate visitation with Eachus and her family and too little weight to concerns about child abuse and neglect stemming from Eachus's admitted drug use, her alleged involvement in criminal activity, and her responsibility for A.E.'s poor dental hygiene. (*See id.*). In addition, Huffman objected to the magistrate's recommendation on the basis that the magistrate erred by not following the GAL's suggestion that Huffman be named as A.E.'s residential parent. (*Id.*). Thus, in this appeal, we limit our analysis to determining whether the trial court's R.C. 3109.04(F)(1)(d), (f), and (h) findings are

supported by competent, credible evidence, whether the trial court abused its discretion in weighing the R.C. 3109.04(F)(1) factors, and whether the trial court abused its discretion by not following the GAL's recommendation that Huffman be designated as A.E.'s residential parent.

{¶18} With respect to R.C. 3109.04(F)(1)(d), the magistrate noted that "[t]he Court is concerned that with [Huffman], [A.E.] would be in school during the day, and then in the care of others during his work schedule of 2-10; while [Eachus] would be available to the child in the evenings, after school." (Doc. No. 59). In turn, the trial court observed that "ORC 3109.04(F)(1)(d) * * * make[s] the parents [sic] available time relevant" and found that the magistrate's concerns about Huffman's work schedule were "only one of the factors considered by the Magistrate." (Doc. No. 68).

{¶19} The trial court's findings as to R.C. 3109.04(F)(1)(d) are supported by the record. Huffman testified that he typically works from 2:00 p.m. until 10:00 p.m. Monday through Friday, that he occasionally works overtime on the weekends, and that he never travels for work. (June 7, 2018 Tr. at 31). He stated that while he cannot predict when he will be required to work overtime, he is rarely required to do so. (*See id.* at 35, 42). He estimated that he had been required to work overtime only three times in the three months preceding the date of the hearing. (*Id.* at 35). Huffman testified that he has worked this schedule for two to three years and that

he does not expect his schedule to change. (*Id.* at 45). He stated that A.E. stays with A.E.'s grandparents, A.E.'s great-grandparents, or A.E.'s stepmother whenever he has to work. (*Id.* at 34-35). Ultimately, Huffman conceded that once A.E. is in preschool, A.E. would often be in the care of a nonparent during his parenting time when he has to work his regular work schedule or overtime. (*Id.* at 45-46).

{¶20} On the other hand, Eachus testified that she typically works from 7:00 a.m. until 3:20 p.m. Monday through Friday. (*Id.* at 60). She testified that she irregularly works overtime from 3:00 a.m. until 3:20 p.m. on some weekdays but that she does not work weekends and that she would generally be home in the afternoon and evening to take care of A.E. after he gets home from preschool. (*Id.* at 60-61). She stated that her mother, Michelle Eachus ("Michelle"), would be able to take care of A.E. for the "hour or so gap" between the time she leaves work and the time she returns home. (*Id.* at 61).

{¶21} Huffman argues that the trial court's concerns about his work schedule "sends a chilling message to working parents" that a parent who commits any number of misdeeds is to be preferred over "a responsible parent [who] works second shift." (Appellant's Brief at 17). We disagree. Contrary to Huffman's assertion, the trial court's belief that Eachus's work schedule better serves A.E.'s

best interest simply reflects its reasoned judgment that it is generally better for a child to spend time with a parent instead of a nonparent.

{¶22} With regard to R.C. 3109.04(F)(1)(f), the trial court observed that "the record supports a finding that [Huffman] has shown a failure to facilitate visitation." (Doc. No. 68). The trial court found that "[t]he fact that [Huffman] unilaterally chose to restrict access to [A.E.] after [Eachus's] release from jail is country [sic] to [A.E.'s] best interest." (*Id.*).

{¶23} We conclude that a substantial amount of competent, credible evidence supports the trial court's R.C. 3109.04(F)(1)(f) best-interest findings. Regarding A.E.'s visitation with his maternal grandparents, Eachus testified that while she was in jail, Michelle "would get [A.E.] every other weekend until [she] got out, and then [Huffman] no longer let [her] parents have him every other weekend." (June 7, 2018 Tr. at 54-55). She also testified that her parents "were supposed to see [A.E.] the weekend after Easter, but they [were not] allowed to see him unless they [went] to Patchworks House." (*Id.* at 63). Huffman disputed elements of Eachus's account of A.E.'s visitation with his maternal grandparents, testifying that he had "text messages and phone calls, proof where [he] texted [Michelle] every weekend [Eachus] was locked up, asking them to take [A.E.] if they wanted him. And they ignored [him] or they did not want [A.E.]" (*Id.* at 84-85). He testified that A.E.'s maternal grandparents "took [A.E.] two weekends out

of the whole time" and that he offered A.E.'s maternal grandparents visitation with A.E. during what would have been Eachus's weekends of visitation but "they didn't want [A.E.]" (*Id.* at 85). Huffman further stated that after Eachus got out of jail, A.E.'s maternal grandparents requested time with A.E. and he "told them Patchworks had been advised by my lawyer." (*Id.*). Although Huffman's testimony is unclear, he appears to have testified that A.E.'s maternal grandparents did not request visitation with A.E. after Eachus got out of jail but that he took the initiative to tell A.E.'s maternal grandparents that they could only visit with A.E. through Patchworks House. (*See id.* at 85-88). Michelle testified that she received unsupervised visits with A.E. while Eachus was in jail and that she never declined an opportunity to visit with A.E. (*Id.* at 91-92). However, she stated that once Huffman believed that Eachus was released from jail, she was not allowed to see A.E. (*Id.* at 90). Michelle testified that once Eachus was released from jail, she texted Huffman on three or four occasions asking to visit with A.E. but Huffman largely ignored her. (*Id.* at 91). She stated that when Huffman finally responded to her inquiries, his only response was "Patchworks." (*Id.* at 91-92).

{¶24} Thus, the evidence establishes Huffman's difficulties in facilitating visitation between A.E. and his maternal grandparents following Eachus's release from jail. However, Huffman contends that his unwillingness to facilitate visitation with A.E.'s maternal grandparents after Eachus was released from jail is irrelevant

to A.E.'s best interest because "[t]here was never a Court Order granting any grandparent visitation with [A.E.]" and "[t]here was never a motion filed by either party seeking an Order granting a grandparent visitation." (Appellant's Brief at 13). We disagree. Huffman correctly notes that the trial court never issued an order granting A.E.'s maternal grandparents visitation or companionship rights with A.E. As a result, it is unclear whether the trial court should have treated A.E.'s visitation with his maternal grandparents under R.C. 3109.04(F)(1)(f). However, "[a] trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer*, 2013-Ohio-2843, at ¶ 41, citing *Shaffer v. Shaffer*, 3d Dist. Paulding No. 11-04-22, 2005-Ohio-3884, ¶ 20. Accordingly, the trial court was empowered to consider the extent to which Huffman voluntarily permitted A.E. to visit with his maternal grandparents and family as a factor relevant to A.E.'s best interest.

**{¶25}** The record reflects that A.E. knows his maternal family well and that he has close, loving relationships with Michelle and other members of Eachus's family. (*See, e.g.*, June 7, 2018 Tr. at 53-55, 90). The record also reflects that Huffman permitted Eachus's family to have unsupervised visits with A.E. while Eachus was in jail, and there is no evidence in the record suggesting that these visits were in any way inappropriate or harmful to A.E. Nevertheless, the record establishes that Huffman suddenly and unilaterally denied Eachus's family access

to A.E. once Eachus was released. Although Huffman testified that Eachus's family was not interested in visiting with A.E. while Eachus was in jail and that he did not deny them access to A.E. after Eachus was released, the magistrate expressly found Huffman's testimony not to be credible. (Doc. No. 59). "'[C]redibility, especially in child custody matters, is a matter reserved for the trier of fact and we will not second-guess credibility determinations.'" *Brammer* at ¶ 52, quoting *Sellers v. Sellers*, 4th Dist. Washington No. 09CA45, 2010-Ohio-3712, ¶ 17. Accordingly, the trial court did not err by considering the extent to which Huffman voluntarily facilitated visitation with A.E.'s maternal grandparents as a factor relevant to A.E.'s best interest, and the record supports the trial court's concerns that Huffman did not act in A.E.'s best interest by abruptly terminating visitation with A.E.'s maternal grandparents without any stated cause.

{¶26} As to R.C. 3109.04(F)(1)(h), the trial court found that there was "no credible evidence in the record to support the claim that '[Eachus] abused her unborn child,'" and that there was "no relevant or credible evidence pertaining to the allegations of past domestic violence and physical harm to [A.E.]" (Doc. No. 68). Furthermore, the trial court found that the record supports that A.E.'s poor dental hygiene required surgical intervention, but that both Huffman and Eachus

shared "responsibility for instilling proper hygiene on their child."[1] (*Id.*). In addition, the trial court found that there was no evidence that Eachus "neglected proper care as she had scheduled an appointment prior to her arrest and incarceration." (*Id.*). The trial court also found that "[t]he fact that [A.E.] suffered a skull fracture at 13 months was * * * significant" but "no charges were filed, and no credible evidence was submitted to support a conclusion that the injury was the fault of either parent." (*Id.*). Finally, the trial court found that Eachus's "use of drugs was a concern; however, there was no evidence in the record to rebut her testimony that she is now clean and sober."[2] (*Id.*).

{¶27} The trial court's R.C. 3109.04(F)(1)(h) best-interest findings are supported by competent, credible evidence. First, regarding A.E.'s dental hygiene, the GAL testified that in March 2018, A.E. "had to have five teeth pulled, seven crowns, and two root canals." (June 7, 2018 Tr. at 12). The GAL opined that both Huffman and Eachus "need to make sure [A.E. is] brushing his teeth twice a day and regular dental care." (*Id.* at 13). In an effort to explain the state of A.E.'s teeth, Eachus testified that although A.E. regularly brushed his teeth in the morning and

---

[1] In his recommendation, the magistrate found under R.C. 3109.04(F)(1)(e)—the mental and physical health of all persons involved in the situation—that A.E. "suffered from improper dental care resulting in recent surgery." (Doc. No. 59). Huffman did not argue that this finding is unsupported by evidence in the record. (*See* Doc. No. 66). Rather, Huffman argued that the magistrate should have considered A.E.'s poor dental health under R.C. 3109.04(F)(1)(h) as an indication that Eachus caused A.E. to be a neglected child. (*See id.*). Thus, the trial court addressed A.E.'s dental hygiene under R.C. 3109.04(F)(1)(h). (Doc. No. 68).

[2] As with the issue of A.E.'s dental health, the trial court evaluated A.E.'s skull fracture and Eachus's drug use under R.C. 3109.04(F)(1)(h) instead of addressing them under R.C. 3109.04(F)(1)(e) as the magistrate did. (*See* Doc. Nos. 59, 68).

at night before he went to bed, "he was really stubborn about [her] not helping him," and she suggested that A.E. might not have been brushing his teeth thoroughly. (*Id.* at 68). She testified that she did not know whether A.E. "had regular dental hygiene at [Huffman's] house." (*Id.*). Eachus stated that she first took A.E. to the dentist after she and Huffman grew concerned over apparent decay in A.E.'s front two teeth. (*Id.*). She testified that Huffman urged her to take A.E. to a follow-up appointment where "the dentist discovered that there was almost a cavity on every tooth." (*Id.*). However, only A.E.'s baby teeth were affected as none of A.E.'s adult teeth have come in. (*Id.* at 68-69). Eachus explained that she did not take A.E. to the dentist prior to these appointments because A.E.'s "pediatrician told [her] [A.E.] didn't need to see a dentist until about three or four once all his teeth came in. So [she] went with the recommendation." (*Id.* at 69). She testified that upon discovering the extent of A.E.'s tooth decay, she scheduled an appointment for surgery before she was arrested. (*Id.* at 67-68). Huffman testified that although he did not initially know of the scheduled surgery, he was ultimately responsible for "get[ting] it set up" once Eachus was arrested and jailed. (*Id.* at 36). Finally, Eachus stated that, based on this experience with A.E.'s teeth, she intends to be more careful and observant with all of her children's teeth and that she already scheduled a dentist appointment for her two-year-old daughter. (*Id.* at 69).

{¶28} With respect to A.E.'s head injury, the GAL testified that A.E. suffered a skull fracture when he was 13 months old. (*Id.* at 12). However, the GAL noted that no criminal charges were filed and that it might have been the result of an accident. (*Id.* at 12-13). Eachus testified that she discovered A.E.'s hairline skull fracture after A.E. completed a three-hour visit with Huffman but that she did not know how A.E. sustained the injury. (*Id.* at 63-64). She stated that she took A.E. to the hospital approximately one hour after picking A.E. up from visitation with Huffman. (*Id.* at 64). As for Huffman, he denied that A.E.'s skull fracture was discovered immediately following his visitation with A.E. (*Id.* at 46).

{¶29} Concerning Eachus's present drug use, Eachus testified that she does not currently have any issues with drugs or alcohol. (*Id.* at 74). She acknowledged that she used to smoke marijuana but stated that she has been "clean and sober" since November 2017. (*Id.* at 74, 80). No evidence was offered to rebut Eachus's claims that she stopped ingesting marijuana and that she does not have problems with alcohol.

{¶30} Thus, the record supports the trial court's determination that A.E.'s cracked skull, Eachus's substance use, and A.E.'s poor dental hygiene do not support a conclusion that either Huffman or Eachus caused A.E. to be an abused or neglected child. First, the record reflects that the cause of A.E.'s skull fracture was never determined and that no criminal charges were filed. Even if the trial court

believed Eachus's testimony that she discovered the fracture after A.E. visited with Huffman, Eachus did not actually assign blame for the injury to Huffman. Furthermore, because Eachus's testimony that she is not currently abusing drugs or alcohol went unchallenged, there is no basis to conclude that she is, at present, putting A.E. at risk by exposing him to any substance abuse. Finally, while A.E.'s dental hygiene is certainly concerning, the record reflects that Eachus was aware of the problem and that she made an effort to provide A.E. with proper dental care. In fact, the record reflects that Eachus was following A.E.'s pediatrician's advice by not taking A.E. to the dentist until he was older.

{¶31} Yet, Eachus's marijuana use during her pregnancy with one of A.E.'s half-siblings presents a closer question of whether the trial court should have found reason to believe that Eachus "has acted in a manner resulting in a child being an abused child * * *." R.C. 3109.04(F)(1)(h). Eachus testified that she stopped ingesting marijuana in November 2017 and "only used [marijuana] for about six to seven months before [she] stopped. So around February or March of 2017." (June 7, 2018 Tr. at 80). She acknowledged that she was pregnant with one of A.E.'s half-siblings during this period. (*Id.* at 80-81). Although she testified that she did not use any drugs other than marijuana, she did not know whether the marijuana she consumed had been laced with other substances. (*Id.* at 80-81). Huffman insists that Eachus's testimony is "absolute, credible evidence that [Eachus] abused her

unborn child" and that "[c]onsuming marijuana while pregnant is child abuse." (Appellant's Brief at 15).

{¶32} Although Eachus's admitted use of marijuana during her pregnancy is, without question, alarming, we disagree with Huffman's argument that the trial court erred by finding insufficient evidence in the record that Eachus acted in a manner that resulted in a child being an abused child. Under R.C. 2151.031(D), an abused child includes any child who "[b]ecause of the acts of his parents * * *, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." "When a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), *per se* an abused child." *In re Baby Boy Blackshear*, 90 Ohio St.3d 197 (2000), paragraph one of the syllabus. However, when a newborn child's toxicology screen does not yield a positive result for an illegal substance, that child is not per se an abused child under R.C. 2151.031(D) even if the child's mother admitted to using an illegal substance during pregnancy or if the mother tested positive for an illegal substance just weeks before the child's birth. *See In re E.M.*, 6th Dist. Lucas No. L-14-1220, 2015-Ohio-1392, ¶ 12 (holding that a child who did not test positive for heroin upon birth was not per se an abused child under R.C. 2151.031(D) even though her mother admitted using heroin during the pregnancy and tested positive for heroin approximately five weeks before the child's birth).

Although a negative toxicology screen does not give rise to the *Blackshear* per se rule, a child whose mother ingested illegal substances during her pregnancy may still be found to be an abused child under R.C. 2151.031(D) if clear and convincing evidence is produced showing that the newborn child's health or welfare was actually harmed or threatened with harm due to prenatal maternal drug abuse. *See id.* Evidence sufficient to show that the newborn child's health or welfare was harmed or threatened with harm may include, for example, evidence documenting that the child experienced symptoms of drug withdrawal at the time of its birth. *See id.*

{¶33} Here, the only evidence regarding prenatal maternal drug abuse and its effects on A.E.'s younger half-sibling is Eachus's testimony that she ingested marijuana while pregnant. The record does not contain the results of any toxicology screen conducted on A.E.'s half-sibling at the time of his birth, and there is no evidence regarding A.E.'s half-sibling's physical and mental health at the time of his birth. Therefore, the record contains insufficient evidence to find that A.E.'s half-sibling's health or welfare was harmed or threatened with harm as a consequence of Eachus's prenatal marijuana use. In other words, the record does not establish that Eachus's conduct resulted in A.E.'s half-sibling being an abused child as defined by R.C. 2151.031(D).

**{¶34}** Similarly, the record fails to establish that Eachus acted in a manner that resulted in A.E.'s half-sibling being an abused child as defined under either R.C. 2151.031(B) or (C). Under R.C. 2151.031(B), an abused child includes any child who "[i]s endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child." Under the facts of this case, Eachus's prenatal drug abuse could have arguably exposed her to criminal liability under R.C. 2919.22(A), which provides: "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." However, "[a] parent may not be prosecuted for child endangerment under R.C. 2919.22(A) for substance abuse occurring before the birth of the child." *State v. Gray*, 62 Ohio St.3d 514 (1992), paragraph one of the syllabus. Furthermore, R.C. 2151.031(C) provides that an abused child includes any child who "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it." As discussed in the preceding paragraph, the record contains no evidence suggesting that A.E.'s half-sibling exhibited signs of having sustained actual mental or physical harm because of Eachus's prenatal marijuana use. Thus, the record does not show that Eachus's conduct resulted in A.E.'s half-sibling being an abused child as

defined by R.C. 2151.031(B) or (C). Consequently, the trial court did not err by finding that no credible evidence in the record supports Huffman's claim that Eachus acted in a manner that resulted in her unborn child being an abused child.

{¶35} In light of the foregoing, we conclude that the trial court's R.C. 3109.04(F)(1)(d), (f), and (h) findings are supported by competent, credible evidence. When considering the trial court's R.C. 3109.04(F)(1)(d), (f), and (h) findings along with its other R.C. 3109.04(F)(1) best-interest findings, which Huffman does not contest, it cannot be said that the trial court abused its discretion by denying Huffman's request to modify the existing custody decree to designate him as A.E.'s residential parent. The record establishes that A.E. has lived constantly with Eachus and his half-siblings since his birth, that he shares an incredibly close bond with his half-siblings, and that he is extremely attached to his maternal grandmother. (June 7, 2018 Tr. at 51-54, 59, 66-67, 77-78). *See* R.C. 3109.04(F)(1)(c). There is limited evidence of A.E.'s attachment to and relationships with members of Huffman's side of the family. Moreover, the evidence shows that A.E. will be living in a home with which he is very familiar with Eachus and his half-siblings and that he will have his own bedroom and bed. (June 7, 2018 Tr. at 51-54, 56-58). *See* R.C. 3109.04(F)(1)(d). In addition, Eachus and A.E. are generally in good health. (June 7, 2018 Tr. at 16, 38). *See* R.C. 3109.04(F)(1)(e). Altogether, the trial court's decision to deny Huffman's motion

and keep Eachus as A.E.'s residential parent is not arbitrary, unreasonable, or unconscionable.

**{¶36}** Finally, our conclusion is not affected by the fact that the trial court denied Huffman's motion despite the GAL's recommendation that Huffman be designated as A.E.'s residential parent. "'"[A] trial court is not bound to follow a guardian ad litem's recommendation."'" *Merriman v. Merriman*, 3d Dist. Paulding No. 11-15-10, 2016-Ohio-3385, ¶ 19, quoting *Bomberger-Cronin v. Cronin*, 2d Dist. Greene No. 2014-CA-4, 2014-Ohio-2302, ¶ 27, quoting *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. "'"The function of a guardian ad litem is to consider the best interests of a child and to make a recommendation to the court, but the ultimate decision in any proceeding is for the judge, and the trial court does not err in making an order contrary to the recommendation of the guardian ad litem."'" *Id.* at ¶ 19, quoting *Koller v. Koller*, 2d Dist. Montgomery No. 22328, 2008-Ohio-758, ¶ 24, quoting *In re D.W.*, 2d Dist. Montgomery No. 21630, 2007-Ohio-431, ¶ 24. Here, it is clear that the trial court considered the GAL's recommendation in ruling on Huffman's motion. (*See* Doc. No. 68). That the trial court weighed the factors relevant to A.E.'s best interest differently than the GAL and reached a conclusion contrary to the GAL's recommendation does not result in an abuse of discretion on the part of the trial court.

**{¶37}** Huffman's assignment of error is overruled.

**{¶38}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**